MICHAEL J. HEYMAN
United States Attorney
District of Alaska

DUSTIN M. GLAZIER
Assistant U.S. Attorney
U.S. Attorney's Office
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
Email: Dustin.Glazier@usdoj.gov

Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| OCEANA, INC., | |
| Plaintiff, | |
| v. | CASE NO. 3:24-cv-00279-SLG |
| NATIONAL MARINE FISHERIES SERVICE, | |
| Defendants. | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Oceana, Inc. ("Oceana") has sued the United States Department of

Commerce ("DOC"), National Oceanic and Atmospheric Administration ("NOAA") and

the National Marine Fisheries Service ("NMFS") (collectively "Defendants") under the

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. The Defendants have properly

discharged their FOIA obligations by performing a reasonable search for records,

properly identifying responsive records, producing releasable documents or portions of

documents, and invoking proper legal authority when withholding documents or portions of documents that were otherwise responsive to Oceana's FOIA request. The government has properly discharged its duties under FOIA and now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## FACTUAL BACKGROUND

Plaintiff Oceana is an international nonprofit ocean conservation organization. Oceana brought this FOIA action to compel defendant National Marine Fisheries Service ("NMFS") to release agency records related to the take of marine mammals in North Pacific groundfish fisheries.[1] The present motion for summary judgment concerns that FOIA request.

### I. PLAINTIFF'S FOIA REQUESTS

#### a. First Request - (DOC-NOAA-2021-001424)

Plaintiff submitted a FOIA request to NMFS dated April 30, 2021, seeking:

(1) Photos and/or video of the April 2020 incident of two orca whale takes in a North Pacific groundfish trawl fishery. Given the attention to this incident and the need to timely contribute to the public's understanding, we request the agency release these records as expeditiously as possible before beginning to search for and duplicate the records described below.

(2) Photos and/or videos of cold-water corals and sponge, king crab, tanner crab, halibut, sablefish, and king salmon taken as bycatch in the Gulf of Alaska (as defined by the fishery management plan area) during federally managed commercial trawl fisheries from 2010 to present. Our request includes photos and/or video that depict these species within the trawl net, in mixed-catches, on-deck, or in observer sampling baskets. Oceana requests photos and video be labeled with the name of the fishery, date, and finest-scale spatial location known.

---

[1] Dkt 1 at 1.

(3) Photos and/or video records of all documented human-caused serious injury or mortality of marine mammals in the federal North Pacific groundfish trawl fisheries from 2009 to present. We request photos be labeled or linked to the interactions described in the Appendix tables of published Technical Memorandums from 2009-2017, and for those not published, descriptions of unpublished interactions from 2018 to present. Oceana requests photos and video be labeled with the name of the fishery, date, and finest-scale spatial location known.

(4) Photos/and or video of federally managed commercial trawl fisheries interactions with walrus, polar bear, and sea otter from 2009 to present. Oceana requests photos and video be labeled with the name of the fishery, date, and finest-scale spatial location known.[2]

### b. Second Request - DOC-NOAA-2024-000011

Plaintiff submitted a second FOIA request to NMFS on October 16, 2023, which

sought:

(1) Records associated with the take of orcas in North Pacific ground fish fisheries from 2019 to present including the observer report, self-report, lat/long coordinates of the take, identification of the fishery involved in the take, and the date and time of the reported take.

(2) Records identifying the stock(s) of orcas for the above described takes, if known, or how the take will be assigned to stock(s) in the absence of identifying information.

(3) Records describing any genetic information collected that is related to the above described takes.[3]

### c. Third Request - DOC-NOAA-2024-000025

Plaintiff submitted a similar, third FOIA request also on October 16, 2023, which

requested:

---

[2] Exhibit 1 to the Declaration of Jennifer Ferdinand, Deputy Director of the Alaska Fisheries Science Center.
[3] Declaration, Exhibit 13.

(1) Any photos and/or videos of orca takes in Alaska groundfish fisheries from 2019 to present at the highest resolution available.

Our request includes photos and/or video that depict the animals in the water, within the trawl net or other gear, in mixed-catches, or on-deck with the background imagery visible so the viewer can determine the context and setting of the photo. Oceana requests photos and video be labeled with the name of the fishery, date, and finest-scale spatial location known including latitude and longitude.[4]

## II.     NOAA'S PROCESSING OF THE FOIA REQUEST

As explained in Deputy Director Ferdinand's Declaration, NOAA processed Plaintiff Oceana's FOIA requests through coordinated searches and reviews conducted within NMFS, primarily involving the Alaska Fisheries Science Center ("AFSC"), including its Fisheries Monitoring and Analysis Division. These offices were selected for their responsibility over data collected under the North Pacific Observer Program and for their specialized knowledge of the marine mammal interactions and bycatch events described in Plaintiff's FOIA requests. These offices were also the logical custodians of photo, video, and metadata records responsive to the subject matter of the requests.

The three requests at issue each sought visual and documentary records concerning marine mammal takes and bycatch in North Pacific groundfish fisheries. Following receipt of each request, NMFS engaged directly with Oceana to clarify scope and reduce burden, resulting in revised formulations that defined the media sought, applicable fisheries, and inclusion of identifying metadata.

---

[4] Declaration, Exhibit 14.

*Oceana, Inc. v. National Marine Fisheries Service*            Page 4 of 21
3:24-cv-00279-SLG

In response to Request 1, originally received on April 30, 2021, NMFS conducted a comprehensive review of archived images and data collected by fishery observers and electronic monitoring systems. The revised request ultimately sought 100 of the most recent photo or video records per bycatch species, with associated gear context and observer labels. NOAA identified and compiled responsive records, and conducted multiple levels of internal review to ensure compliance with applicable legal protections, particularly those mandated by the Magnuson-Stevens Fishery Conservation and Management Act ("MSA").[5]

NOAA ultimately released over 1,500 images across six interim and final productions. Images were reviewed and redacted as necessary under FOIA Exemption (b)(3), in accordance with the confidentiality provisions of the MSA. NOAA determined that redactions were necessary to avoid direct or indirect disclosure of confidential observer information or identifying features of fishing vessels. The redactions were implemented using Adobe Photoshop's pixelation tool, which permitted more precise visual separation of protected and releasable content than prior agency tools. The final production under Request 1 was provided to Plaintiff on September 16, 2022.[6]

On January 31, 2022, Plaintiff submitted a request for reconsideration of the redaction method and scope, asserting that certain images were overly distorted. NOAA reviewed the concerns and reaffirmed the necessity of the redactions. On September 27,

---

[5] Declaration at ¶ 33-35.
[6] Declaration, Exhibit 10.

2022, NOAA issued a formal response denying the request for reconsideration, explaining that its redactions were narrowly tailored and necessary under the MSA. On December 22, 2022, Plaintiff submitted an administrative appeal to DOC. On October 4, 2023, DOC issued a final decision denying Plaintiff's appeal, affirming NOAA's redactions and the use of pixelation to comply with Exemption 3.

Requests 2 and 3 were received on October 16, 2023. In response, NOAA again consulted with Oceana to revise and clarify the scope of each request. Request 2 sought documentary records related to killer whale takes and genetic stock identification; Request 3 sought corresponding photo and video documentation. NOAA confirmed with Plaintiff that redactions would again be applied consistent with those used in response to Request 1. Searches were conducted by knowledgeable AFSC staff using source materials submitted through the North Pacific Observer Program and associated metadata repositories.

For Request 2, NOAA released 37 documents, including one document withheld in full under FOIA Exemption (b)(7)(A), which protects records compiled for law enforcement purposes. For Request 3, NOAA released 15 documents containing 119 images, with redactions applied pursuant to FOIA Exemption (b)(3) and the MSA. No further responsive documents were located. Appeals concerning both Requests 2 and 3 were filed by Plaintiff on May 29, 2024, and July 15, 2024, respectively. As of the date of this filing, no final determination has been issued by the DOC on either appeal.

Across all three FOIA requests, NOAA located and released a total of 1,248 responsive documents. Of these, only one document was withheld in full.[7] NOAA applied redactions only where necessary to comply with statutory mandates, and all records were reviewed by multiple agency staff, including Deputy Director Ferdinand. NOAA has confirmed that all reasonably segregable non-exempt information was released to Plaintiff.

## III. JUSTIFICATION FOR WITHHOLDING OF DOCUMENTS FOIA EXEMPTIONS

FOIA Exemption 3 permits the withholding of records that are "specifically exempted from disclosure by statute," provided that the statute either requires withholding without discretion or establishes particular criteria for withholding. 5 U.S.C. § 552(b)(3). NOAA withheld certain images and portions of images responsive to Plaintiff's FOIA requests pursuant to Exemption 3, in conjunction with the confidentiality provisions set forth in the MSA, 16 U.S.C. § 1881a(b).

The MSA mandates that NOAA maintain the confidentiality of information submitted to the agency under MSA requirements and prohibits the disclosure of any such information that would "directly or indirectly disclose the identity or business of any person who submits such information," unless one of the limited statutory exceptions applies. This includes "observer information" as defined at 16 U.S.C. § 1802(32).

---

[7] Declaration at ¶ 32.

Case 3:24-cv-00279-SLG    Document 23    Filed 06/12/25    Page 7 of 21

## Application of the MSA Confidentiality Provisions

Pursuant to the MSA and FOIA Exemption 3, NMFS withheld identifying or potentially identifying portions of images and documents that, if disclosed, could directly or indirectly reveal confidential information about fishing vessels, observer activity, or business operations. This included visual information such as:

- Vessel configuration and gear layout;

- Deck and factory areas;

- Observer sampling stations;

- Fishing operations in progress;

- Vessel crew or observers.

NOAA determined that such visual information, especially when released in image form with associated metadata (such as time, fishery, and location), posed a foreseeable risk of indirectly identifying the submitting party—particularly given the small number of vessels operating in specific fisheries and the rapidly evolving capabilities of public technology, artificial intelligence, and online tools.

## Method of Redaction and Review

As explained in Deputy Director Ferdinand's Declaration, redactions were applied manually using Adobe Photoshop's "lasso" and pixelation tools. This method allowed NOAA to precisely separate exempt and non-exempt content and reduce the risk of over-redaction. This pixelation method replaced the use of the black rectangular redaction tool

previously used in the agency's document management system, which had led to less precise results and unnecessary obscuring of non-exempt image elements. NOAA staff reviewed each image individually and evaluated the appropriate redaction zone based on risk of disclosure and context.

All image redactions were reviewed by multiple NOAA staff, and Deputy Director Ferdinand personally reviewed the redacted images to ensure compliance with applicable confidentiality standards. NOAA confirmed that all reasonably segregable, non-exempt information was produced.

### Segregability

In accordance with FOIA's segregability requirements, NOAA conducted a careful, line-by-line and image-by-image review of each responsive record to determine whether non-exempt information could be separated and released. The agency's approach was informed by its obligation to release the maximum amount of non-exempt information without compromising confidential data protected by statute.

For example, NOAA declined to redact the marine mammals themselves, even where some background redactions were necessary.[8] When background elements could not be isolated from the animal without compromising confidentiality, NOAA pixelated only the necessary portions, leaving the subject animal visible and identifiable to the greatest extent possible.

---

[8] Declaration at ¶ 16.

*Oceana, Inc. v. National Marine Fisheries Service*                    Page 9 of 21
3:24-cv-00279-SLG

## Description of Withholdings

NOAA applied Exemption 3 to the following categories of material across the three FOIA requests:

- **Marine Mammal Imagery**: Pixelation of background elements on deck, including gear, observers, crew members, or factory operations that could identify specific vessels or fisheries.

- **Coral and Bycatch Images**: Partial redactions of identifying visual features associated with confidential sources under the MSA.

- **Law Enforcement Record**: One document was withheld in full under FOIA Exemption 7(A), but this record also contained portions that were exempt pursuant to Exemption 3.[9]

- **Metadata**: Redactions were also applied to metadata embedded in image files where such data could include identifying vessel or observer information.

NOAA released a total of 1,248 responsive documents, including over 1,500 images, and applied redactions only where required to prevent the disclosure of MSA-protected information. Only a single document was withheld in full (under Exemption 7(A)), and all remaining redactions were partial.

---

[9] Declaration at ¶ 27.

Case 3:24-cv-00279-SLG    Document 23    Filed 06/12/25    Page 10 of 21

NOAA properly invoked FOIA Exemption 3 in conjunction with the confidentiality provisions of the MSA to withhold information that, if disclosed, could reasonably be expected to directly or indirectly reveal the identity, operations, or business practices of persons who submitted data under the MSA. NOAA's redaction method ensured that all non-exempt information was reasonably segregated and disclosed, consistent with FOIA's purpose and statutory mandates.

## LEGAL BACKGROUND

### I.    FOIA BACKGROUND

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Accordingly, FOIA generally requires the disclosure of agency records upon the request of any person. 5 U.S.C. § 552(a)(3)(A).

The right to access agency records is not unlimited:  FOIA includes nine statutory exemptions to the general disclosure obligation. 5 U.S.C. § 552(b)(1)-(9). These exemptions reflect Congress's decision "to reach a workable balance between the right of the public to know and the need of the Government to keep information in confidence." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (quoting H.R. Rep. No. 89-1497, at 6 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2418, 2423); *accord Pickard v. Dep't of Justice*, 653 F.3d 782, 790 (9th Cir. 2011) (Wallace, J., concurring) ("'Congress

established FOIA' to strike a balance between the public's interest in knowing 'what [its] government is up to' and the 'legitimate governmental or private interests' in withholding documents subject to FOIA's exemptions." (quoting *Boyd v. Criminal Div. of the U.S. Dep't of Justice*, 475 F.3d 381, 385 (D.C. Cir. 2007))). Although the nine FOIA exemptions should be "narrowly construed," *FBI v. Abramson*, 456 U.S. 615, 630 (1982), the Supreme Court has made clear that they must be given "meaningful reach and application," *John Doe Agency*, 493 U.S. at 152.

## II.   SUMMARY JUDGMENT IN FOIA LAWSUITS

A court reviews an agency's response to a FOIA request de novo. 5 U.S.C. § 552(a)(4)(B). Under 5 U.S.C. § 552(a)(4)(B) federal jurisdiction is dependent upon a showing that an agency has "(1) 'improperly'; (2) 'withheld'; (3) 'agency records.'" *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980). Agency records are records that are (1) either created or obtained by an agency, and (2) under agency control at the time of the FOIA request. *DOJ v. Tax Analysts*, 492 U.S. 136, 144-45 (1989). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

Because facts in FOIA cases are rarely in dispute, "[m]ost FOIA cases are resolved by the district court on summary judgment." *Animal Legal Defense Fund v. FDA*, 836 F.3d 987, 989 (9th Cir. 2016); *accord Lawyers' Comm. for Civil Rights v. Dep't of the Treasury*, 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008) ("As a general rule,

all FOIA determinations should be resolved on summary judgment."). Discovery is seldom necessary or appropriate. *See Lane v. Dep't of the Interior*, 523 F.3d 1128, 1134-35 (9th Cir. 2008).

An agency bears the burden of justifying the assertion of FOIA exemptions to redact or withhold documents. 5 U.S.C. § 552(a)(4)(B). To meet these burdens, an agency may rely upon reasonably detailed, non-conclusory affidavits. *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996); *Zemansky*, 767 F.2d at 571. An affidavit that "identif[ies] the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption" is "commonly referred to as a 'Vaughn index.'" *Lion Raisins Inc. v. Dep't of Agric.*, 354 F.3d 1072, 1082 (9th Cir. 2004) (citing *Vaughn v. Rosen*, 484 F.2d 820, 823-25 (D.C. Cir. 1973)), *overruled on other grounds by Animal Legal Defense Fund*, 836 F.3d 987 (9th Cir. 2016).

Affidavits submitted by an agency are entitled to a "presumption of good faith." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Moreover, courts "accord substantial weight to an agency's declarations regarding the application of a FOIA exemption." *Shannahan v. IRS*, 672 F.3d 1142, 1148 (9th Cir. 2012) (citing *Hunt v. CIA*, 981 F.2d 1116, 1119-20 (9th Cir. 1992)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007) (citation omitted).

## A.     Withholding of Records under FOIA

In response to a FOIA request for records, an agency must withhold records where their disclosure is prohibited by law. 5 U.S.C. § 552(a)(8)(A).

### Exemption 3

As mentioned above, Exemption 3 protects records exempt from disclosure pursuant to a separate statute. 5 U.S.C. § 552(b)(3).  Analyzing the use of Exemption 3 involves a two-step inquiry: 1) whether the statute identified by the agency is a statute of exemption within the meaning of Exemption 3, and 2) whether the withheld records satisfy the criteria of the exemption statute. *Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 776 (9th Cir. 2015).  In this case, NMFS invoked Exemption 3 in conjunction with the confidentiality provisions of the Magnuson-Stevens Fishery Conservation and Management Act (MSA), 16 U.S.C. § 1881a(b).

The MSA requires that "any information submitted to the Secretary under the requirements of this chapter shall be confidential and shall not be disclosed," subject only to narrow exceptions. 16 U.S.C. § 1881a(b)(1). This includes "observer information," which is broadly defined to encompass records collected by onboard observers, such as images, videos, or reports that may contain identifying details of the vessels, gear, catch, or personnel. *See* 16 U.S.C. § 1802(32). The statute further prohibits disclosure of any information that would "directly or indirectly disclose the identity or business of any person who submits such information." 16 U.S.C. § 1881a(b)(3).

To invoke Exemption 3, the agency "need only show . . . that the withheld material falls within" a statute meeting the exemption's conditions. *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009). Thus, [i]f an agency's statements supporting exemption contain reasonable specificity of detail as to demonstrate that the withheld information logically falls within the claimed exemption and evidence in the record does not suggest otherwise, . . . the court should not conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate whether the court agrees with the agency's opinions." *Id.*

### Exemption 7(A)

Exemption 7(A) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information… could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). The exemption requires a two-step showing: (1) that the information was compiled for law enforcement purposes, and (2) that disclosure could reasonably be expected to interfere with enforcement proceedings. *See Robbins Tire & Rubber Co.*, 437 U.S. at 224-5.

Courts have consistently held that the exemption applies not only to criminal investigations, but also to civil and administrative enforcement proceedings, including regulatory compliance actions. *See Mapother v. Dep't of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993). The burden is not onerous; an agency need only establish that "disclosure (1) could reasonably be expected to interfere (2) with enforcement proceedings that are (3)

pending or reasonably anticipated." *Citizens for Resp. & Ethics in Washington v. U.S.*

*Dep't of Just.*, 746 F.3d 1082, 1098 (D.C. Cir. 2014), *see also Maydak v. U.S. Dep't of*

*Just.*, 218 F.3d 760, 766 (D.C. Cir. 2000) (noting that the burden of proof for the

government's invocation of 7(A) can be satisfied "through generic, categorical showings"

alone).

**B.    Segregability**

The Freedom of Information Act requires that "[a]ny reasonably segregable

portion of a record shall be provided to any person requesting such record after deletion

of the portions which are exempt." 5 U.S.C. § 552(b). This provision imposes an

affirmative duty on agencies to conduct a careful, document-by-document review to

determine whether non-exempt information can be reasonably separated from exempt

material and disclosed. *See Wilderness Soc. v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1,

18 (D.D.C. 2004). An agency's segregability analysis must be thorough, and courts will

not accept conclusory or perfunctory assertions that no such information exists. *Mead*

*Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

However, disclosure is not required where the non-exempt portions "are inextricably

intertwined with exempt portions." *Id.* at 260.

As explained in Deputy Director Ferdinand's Declaration, NMFS conducted a

line-by-line and image-by-image review of each record responsive to Plaintiff Oceana's

FOIA requests to assess whether non-exempt portions could be reasonably segregated

and released.[10] For each image, NOAA evaluated whether any portion of the photo, metadata, or contextual labeling could be disclosed without violating the confidentiality requirements of the Magnuson-Stevens Act (MSA), as incorporated under FOIA Exemption 3. Again, this included reviewing imagery for gear, deck layouts, observers, vessel features, and any visual or embedded data that might directly or indirectly disclose confidential information.

Wherever possible, NMFS used targeted redactions to pixelate only the portions of images that posed a disclosure risk. Unlike prior FOIA responses that relied on rectangular blackout tools which often obscured broader portions of an image, the pixelation technique—implemented manually using Adobe Photoshop—allowed NOAA to shield only those features that implicated confidentiality concerns while leaving the primary subject matter (typically a marine mammal or bycatch species) fully visible and intelligible. The record demonstrates that this approach was adopted specifically to improve segregability and preserve as much responsive information as possible.[11]

Deputy Director Ferdinand personally reviewed all redacted images and affirmed that all reasonably segregable, non-exempt portions of responsive records were disclosed. For instance, marine mammals were never themselves redacted unless directly necessary to protect nearby confidential content, and all images were stripped of embedded metadata that could reveal vessel identification. For the one document withheld in full,

---

[10] Declaration at ¶ 44.
[11] Declaration at ¶ 41.

Case 3:24-cv-00279-SLG    Document 23    Filed 06/12/25    Page 17 of 21

again that withholding was made pursuant to Exemption 7(A) and not because of non-segregable content.

Courts have held that an agency's representations in a sworn declaration, made in good faith and demonstrating a detailed segregability analysis, are entitled to a presumption of regularity. *See Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002). Moreover, while a detailed justification for non-segregability must be provided, "the agency is not required to provide so much detail that the exempt material would be effectively disclosed." *Id.* Here, NOAA's declaration provides a robust and credible basis to conclude that the agency satisfied its segregability obligations. There is no indication of bad faith, over-redaction, or failure to consider the potential release of non-exempt material.

## ARGUMENT

Based upon the above facts and law, the Defendants have discharged their obligations under FOIA by (1) invoking proper legal authority when withholding documents or portions of documents that were otherwise responsive to Oceana's FOIA requests and (2) segregating and releasing reasonably non-exempt material.

## I.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT

### A.    Defendants Properly Invoked FOIA Exemptions

In this case, NOAA applied Exemption 3 to withhold or redact portions of images and metadata that could directly or indirectly reveal the identity of fishing vessels or operations, such as photos showing the layout of factory trawlers, observer sampling

Case 3:24-cv-00279-SLG    Document 23    Filed 06/12/25    Page 18 of 21

stations, fishing gear configurations, or individuals on board. As Deputy Director Ferdinand's declaration illustrates, technological advances—especially in publicly available AI-assisted image matching tools—heighten the risk of reverse-engineering vessel identity from seemingly innocuous visual cues.[12]

NOAA's redaction method (using pixelation instead of crude blackout boxes) was designed to preserve the visibility of marine mammals while shielding identifying features, and it was narrowly tailored to meet the confidentiality mandates of the MSA. As such, the information withheld squarely falls within the scope of Exemption 3, as interpreted through the strict nondisclosure obligations imposed by the MSA.

Additionally, NOAA properly invoked Exemption 7(A) to withhold one document in full in response to Request 2. According to Deputy Director Ferdinand's Declaration, the withheld record was not a marine mammal image but was a document compiled during the course of a law enforcement investigation. The ongoing nature of the investigative or enforcement process posed a risk that release of the document could reasonably be expected to interfere with the agency's ability to complete its enforcement functions.[13]In line with established precedent, NOAA's withholding under Exemption 7(A) was proper.

---

[12] Declaration at ¶ 38.
[13] Declaration, Exhibit 27.

**B.     Defendants Properly Segregated Non-Exempt Material**

NOAA fulfilled FOIA's segregability requirement by conducting a meticulous, record-by-record review of all responsive documents and applying redactions only to the extent necessary to protect exempt information under the Magnuson-Stevens Act and other applicable laws. NOAA's use of precise, image-specific redaction techniques, along along with its thorough internal and supervisory review, ensured that all reasonably segregable, non-exempt information was disclosed to Plaintiff. Accordingly, NOAA's withholdings were narrowly tailored, lawful, and fully compliant with FOIA's mandate.

## CONCLUSION

Defendants have discharged their obligations under FOIA by responding to Oceana's FOIA requests and producing all responsive documents to which Oceana is entitled. As such, Defendants are entitled to summary judgment.

RESPECTFULLY SUBMITTED this 12th day of June 2025, in Anchorage, Alaska.

MICHAEL J. HEYMAN
United States Attorney
District of Alaska


/s/ Dustin M. Glazier
Assistant U.S. Attorney
Attorney for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2025,
a true and correct copy of the foregoing
was served electronically on the following:

Rumela Roy (*pro hac vice*)
Andrea A. Treece (*pro hac vice*)
EARTHJUSTICE
*Attorneys for Plaintiff*


/s/ Dustin M. Glazier
Office of the U.S. Attorney