Rumela Roy (*pro hac vice*)
EARTHJUSTICE
633 17th Street, Suite 1600
Denver, CO 80202
303-996-9623 Telephone
rroy@earthjustice.org

Andrea A. Treece (*pro hac vice*)
EARTHJUSTICE
180 Steuart St. #194330
San Francisco, CA 94105
415-217-2000 Telephone
atreece@earthjustice.org

*Counsel for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| OCEANA, INC., | Case No. 3:24-cv-00279-SLG |
| *Plaintiff,* | |
| v. | |
| NATIONAL MARINE FISHERIES SERVICE, | |
| *Defendant.* | |

## PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................iv

INTRODUCTION ..........................................................................................1

LEGAL BACKGROUND ................................................................................2

    I.     The Freedom of Information Act .............................................2

    II.    The Marine Mammal Protection Act ........................................4

    III.   The Magnuson-Stevens Fishery Conservation and Management
         Act ...................................................................................5

FACTUAL AND PROCEDURAL BACKGROUND .........................................7

    I.     Marine Mammal Bycatch in North Pacific Groundfish Fisheries ........7

    II.    Oceana's FOIA Requests .......................................................9

         A.    April 2021 Request No. DOC-NOAA-2021-001424
             (Request 1) ...........................................................9

         B.    October 2023 FOIA Request No. DOC-NOAA-2024-
             000011 (Request 2) ..............................................12

         C.    October 2023 Request No. DOC-NOAA-2024-000025
             (Request 3) ...........................................................13

STANDARD OF REVIEW ............................................................................15

ARGUMENT ...............................................................................................15

    I.     The Service Has Not Provided the Detail or Specificity
         Required to Meet Its Burden to Justify the Claimed
         Exemptions. .........................................................................16

    II.    The Service Has Not Met Its Burden to Show That Exemption 3
         Applies to the Redacted Information. .......................................18

         A.    FOIA and the MMPA Require Release of the Redacted
             Information. ...........................................................19

             1.    Pixelated redactions in photos .........................21

             2.    Photo metadata of fishery name, date, and location.......25

             3.    Redacted information in the spreadsheets .....................26

Pls.' Cross-Mot. Summ. J. & Opp'n to Defs.' Mot. Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-SLG

Case 3:24-cv-00279-SLG   Document 27   Filed 07/07/25   Page 2 of 43

B. The MSA Does Not Exempt the Redacted Information. ...........27

C. The Service's Inconsistent Invocation of Exemption 3 Undermines Its Argument that the Redacted Information Is Exempt. ...................................................................28

III. The Service Has Not Met Its Burden to Show that Exemption 7(A) Applies to the Withheld Record. ................................................29

IV. The Service Did Not Reasonably Segregate All Non-Exempt Information. ..........................................................................33

REMEDY ...................................................................................34

CONCLUSION ...........................................................................35

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Am. C.L. Union Found. of Arizona v. U.S. Dep't of Homeland Sec.*,
No. 14-02052, 2017 WL 8895339 (D. Ariz. Jan. 26, 2017)................................24

*Am. C.L. Union of N. Cal. v. F.B.I.*,
881 F.3d 776 (9th Cir. 2018) ................................................................30

*Am. C.L. Union v. Dep't of Def.*,
389 F. Supp. 2d 547 (S.D.N.Y. 2005) ................................................24

*Am. Ctr. for L. & Just. v. U.S. Dep't of Just.*,
334 F. Supp. 3d 13 (D.D.C. 2018)........................................................31

*Anderson v. CIA*,
63 F. Supp. 2d 28 (D.D.C. 1999)..........................................................34

*Block & Leviton LLP v. Fed. Trade Comm'n*,
No. 19-12539, 2020 WL 6082657 (D. Mass. Oct. 15, 2020)............................25

*Carlson v. U.S. Postal Serv.*,
504 F.3d 1123 (9th Cir. 2007) ......................................................19, 22

*Church of Scientology of Cal. v. U.S. Dep't of Army*,
611 F.2d 738 (9th Cir. 1979) ..............................................................30

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*,
746 F.3d 1082 (D.C. Cir. 2014).........................................................30

*Clemente v. F.B.I.*,
867 F.3d 111 (D.C. Cir. 2017)............................................................30

*Defs. of Wildlife v. U.S. Border Patrol*,
623 F. Supp. 2d 83 (D.D.C 2009).......................................................34

*Forest Guardians v. U.S. Dep't of Interior*,
No. 02-1003, 2004 WL 3426434 (D.N.M. Feb. 28, 2004)................................23

*Hamdan v. U.S. Dep't of Just.*,
797 F.3d 759 (9th Cir. 2015) ......................................................18, 22, 24

Pls.' Cross-Mot. Summ. J. & Opp'n to Defs.' Mot. Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-SLG

Case 3:24-cv-00279-SLG    Document 27    Filed 07/07/25    Page 4 of 43

*Islamic Shura Council of S. Cal. v. F.B.I.*,
635 F.3d 1160 (9th Cir. 2011) ............................................................................35

*Jaffe v. Cent. Intel. Agency*,
516 F. Supp. 576 (D.D.C. 1981)...........................................................................29

*John Doe Agency v. John Doe Corp.*,
493 U.S. 146 (1989)................................................................................................3

*Kamman v. U.S. I.R.S.*,
56 F.3d 46 (9th Cir. 1995) ...................................................................20, 26, 27

*King v. U.S. Dep't of Just.*,
830 F.2d 210 (D.C. Cir. 1987)....................................................................16, 17

*Kucernak v. F.B.I.*,
129 F.3d 126 (9th Cir. 1997) ...............................................................................16

*Lahr v. Nat'l Transp. Safety Bd.*,
569 F.3d 964 (9th Cir. 2009) ...............................................................................15

*Lane v. Dep't of Interior*,
523 F.3d 1128 (9th Cir. 2008) .............................................................................18

*Lessner v. U.S. Dep't of Com.*,
827 F.2d 1333 (9th Cir. 1987) .............................................................................19

*Lewis v. I.R.S.*,
823 F.2d 375 (9th Cir. 1987) ...............................................................................29

*Lion Raisins v. U.S. Dep't of Agric.*,
354 F.3d 1072 (9th Cir. 2004) .............................................................................32

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force*,
566 F.2d 242 (D.C. Cir. 1977).............................................................................33

*Military Audit Project v. Casey*,
656 F.2d 724 (D.C. Cir. 1981).............................................................................17

*Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*,
437 U.S. 214 (1978)................................................................................................3

Pls.' Cross-Mot. Summ. J. & Opp'n to Defs.' Mot. Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-SLG

Case 3:24-cv-00279-SLG     Document 27     Filed 07/07/25     Page 5 of 43

*Oglesby v. U.S. Dept. of Army*,
  79 F.3d 1172 (D.C. Cir. 1996)............................................................18

*Pac. Fisheries, Inc. v. United States*,
  539 F.3d 1143 (9th Cir. 2008) ...........................................18, 22, 24, 33

*Parker v. U.S. Dep't of Just. Exec. Off. for U.S. Att'ys*,
  852 F. Supp. 2d 1 (D.D.C. 2012).........................................................31

*Perry v. Block*,
  684 F.2d 121 (D.C. Cir. 1982).............................................................17

*Quinon v. F.B.I.*,
  86 F.3d 1222 (D.C. Cir. 1996).............................................................35

*Reps. Comm. for Freedom of the Press v. FBI*,
  3 F.4th 350 (D.C. Cir. 2021)...............................................................33

*Rosenfeld v. U.S. Dep't of Just.*,
  57 F.3d 803 (9th Cir. 1995) ...........................................................22, 24

*Scarlett v. Off. of Inspector Gen.*,
  No. 21-819, 2023 WL 2682259 (D.D.C. Mar. 29, 2023)...................22

*Tax Analysts v. I.R.S.*,
  294 F.3d 71 (D.C. Cir. 2002)...............................................................30

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
  489 U.S. 749 (1989).............................................................................2

*United Am. Fin., Inc. v. Potter*,
  531 F. Supp. 2d 29 (D.D.C. 2008).......................................................31

*Wiener v. F.B.I.*,
  943 F.2d 972 (9th Cir. 1991) ...............................................16, 17, 35

*Willamette Indus., Inc. v. United States*,
  689 F.2d 865 (9th Cir. 1982) .........................................................22, 23

*Windel v. United States*,
  No. 02-00306, 2005 WL 846206 (D. Alaska Apr. 11, 2005)............31

Pls.' Cross-Mot. Summ. J. & Opp'n to Defs.' Mot. Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-SLG

Case 3:24-cv-00279-SLG     Document 27     Filed 07/07/25     Page 6 of 43

## Statutes

5 U.S.C. § 552 ...................................................................................*passim*

16 U.S.C. § 1361 ...................................................................................4

16 U.S.C. § 1362 ...............................................................................1, 4

16 U.S.C. § 1371 ...................................................................................4

16 U.S.C. § 1387 ..........................................................................*passim*

16 U.S.C. § 1801 ...............................................................................5, 6

16 U.S.C. § 1802 ...............................................................................5, 6

16 U.S.C. § 1853 ...................................................................................6

16 U.S.C. § 1854 ...................................................................................6

16 U.S.C. § 1881a ..................................................................6, 27, 28

## Regulations

50 C.F.R. § 229.11 ...............................................................................4

50 C.F.R. § 600.10 (Jan. 16, 2025) ..........................................7, 21, 25

50 C.F.R. § 600.420 (Jan. 16, 2025) ........................................................6

## Federal Register

77 Fed. Reg. 30486 (May 23, 2012) ........................................................5

Pls.' Cross-Mot. Summ. J. & Opp'n to Defs.' Mot. Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-SLG

Case 3:24-cv-00279-SLG     Document 27     Filed 07/07/25     Page 7 of 43

# INTRODUCTION

In this Freedom of Information Act (FOIA) action, 5 U.S.C. § 552, Plaintiff Oceana, Inc. (Oceana) seeks photos and other records held by Defendant National Marine Fisheries Service (the Service) that would shed light on commercial groundfish fisheries' take[1] of federally protected marine mammals in the North Pacific. These fisheries, managed by the Service, routinely capture marine mammals as bycatch[2] in their nets and fishing gear. A majority of these entangled animals die or suffer serious injury as a result, putting the survival and recovery of these species, as well as the health of ocean ecosystems and our public marine resources, at risk. Oceana plans to use the requested records to educate the public about the harmful effects of specific fishing gear and to advocate for sound fisheries management and stronger marine mammal protections.

In response to Oceana's requests, the Service released photos that were so heavily redacted that the marine mammal bycatch depicted was virtually unrecognizable. These redactions removed all information that would help viewers understand the relationship between the bycatch and the fishing operations that caused the bycatch, thereby stripping the records of their effectiveness in Oceana's education and advocacy efforts. The Service also redacted key information from other records, such as locations of the take, depriving Oceana of the facts and details necessary to understand where and how marine mammal bycatch occurs, thereby undermining Oceana's efforts to address this problem.

---

[1] "Take" means "to harass, hunt, capture, or kill, or attempt to harass, hunt, capture, or kill any marine mammal." 16 U.S.C. § 1362(13).
[2] "Bycatch" refers to the catch of marine mammals, as well as catch of other animals not targeted by the fishery, during fishing operations.

Pls.' Cross-Mot. Summ. J. & Opp'n to Defs.' Mot. Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-SLG

Case 3:24-cv-00279-SLG    Document 27    Filed 07/07/25    Page 8 of 43

The Service fails to meet its burden under FOIA to show that its extensive redactions and withholdings comport with the statute. Oceana is not seeking disclosure of vessel names or persons' names, faces, and addresses. The Service has not submitted the detailed justification required under FOIA to establish that any of the other information withheld by the agency is exempt from disclosure. The one conclusory declaration the Service has submitted fails to show that the agency's claimed FOIA exemptions, Exemptions 3 and 7(A), apply to the records. Indeed, Exemption 3 cannot exempt the records because neither the Marine Mammal Protection Act (MMPA)—which is the governing statute here—or the Magnuson-Stevens Fishery Conservation and Management Act (MSA) (assuming it is even applicable) specifically prohibits release of these records. The Service also has not shown that all reasonably segregable portions of the records have been released.

The Court should therefore grant Oceana's cross-motion for summary judgment and order the Service to immediately disclose the requested information; to the extent the Service withholds vessel names or persons' names, faces, and addresses, it should be required to file a *Vaughn* index for those withholdings. In the alternative, the Court should review the records *in camera* to determine whether they may be released and order the Service to file a *Vaughn* index and adequate justifications for any withholdings.

## LEGAL BACKGROUND

### I.     The Freedom of Information Act

FOIA protects "the citizens' right to be informed about what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749,

Pls.' Cross-Mot. Summ. J. & Opp'n to Defs.' Mot. Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-SLG

Case 3:24-cv-00279-SLG     Document 27     Filed 07/07/25     Page 9 of 43

773 (1989) (internal quotations omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) (citation omitted).

FOIA requires agencies to make records "promptly available to any person" upon receipt of a request, unless certain narrow exemptions to disclosure apply. 5 U.S.C. § 552(a)(3)(A); *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 154 (1989) (exemptions are to be "narrowly construed" (citation omitted)). Under the FOIA Improvement Act of 2016, even where an exemption applies, agencies may withhold information only when (1) the agency reasonably foresees that disclosure would harm an interest protected by an exemption or (2) disclosure is prohibited by law. 5 U.S.C. § 552(a)(8)(A)(i). The agency has the burden of demonstrating that any withholdings are lawful. *Id.* § 552(a)(4)(B).

Exemption 3 authorizes an agency to withhold information if another statute specifically prohibits its disclosure. *Id.* § 552(b)(3). For statutes enacted before the OPEN FOIA Act of 2009, Exemption 3 only applies if the other statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." *Id.* § 552(b)(3)(A). Exemption 7(A) authorizes the withholding of information compiled for "law enforcement purposes, but only to the extent that the production of such law enforcement records or information … could reasonably be expected to interfere with enforcement proceedings." *Id.* § 552(b)(7)(A).

Pls.' Cross-Mot. Summ. J. & Opp'n to Defs.' Mot. Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-SLG

Case 3:24-cv-00279-SLG    Document 27    Filed 07/07/25    Page 10 of 43

When a portion of a requested record contains exempt information, FOIA requires all non-exempt "reasonably segregable" portions to be released. *Id.* § 552(b).

## II. The Marine Mammal Protection Act

Congress enacted the MMPA to address the concern that "certain species and population stocks[3] of marine mammals are, or may be, in danger of extinction or depletion as a result of man's activities" and to help "protect[] and encourage[]" marine mammals "to develop to the greatest extent feasible." 16 U.S.C. § 1361(1), (6). To further these objectives, the MMPA prohibits the taking of marine mammals, except in specified limited circumstances. *Id.* § 1371(a). The Service is responsible under the MMPA for protecting cetaceans and pinnipeds other than walruses.

The MMPA requires regulated fisheries to report all incidental mortality and injury of marine mammals, including the species killed or injured and the date, time, and geographic location of such occurrence. *Id.* § 1387(e). Nothing in the MMPA prohibits the agency from releasing this information to the public. *See id.* § 1387.

The MMPA also authorizes the Service to deploy observers and collect observer information on marine mammal take. *Id.* § 1387(d). Only "proprietary information" collected by observers is confidential under the MMPA. *Id.* § 1387(d)(8).[4] The MMPA

---

[3] The term "stock" means "a group of marine mammals of the same species or smaller taxa in a common spatial arrangement, that interbreed when mature." 16 U.S.C. § 1362(11).

[4] The MMPA does not define the phrase "proprietary information." Black's Law Dictionary defines "proprietary information" as "[i]nformation to which the owner has a protectable interest." Proprietary Information, Black's Law Dictionary (12th ed. 2024). The Service's regulations define "[p]roprietary information" to "include[] information, the unauthorized disclosure of which could be prejudicial or harmful, such as information or data that are identifiable with an individual fisher." 50 C.F.R. § 229.11(a). But "information or data that are identifiable with an individual fisher" is not necessarily a protectable property interest; thus, this definition appears to be overbroad and inconsistent with the plain meaning of "proprietary information."

Pls.' Cross-Mot. Summ. J. & Opp'n to Defs.' Mot. Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-SLG

Case 3:24-cv-00279-SLG    Document 27    Filed 07/07/25    Page 11 of 43

requires the Service to "release or make public upon request any such [proprietary observer] information in aggregate, summary, or other form which does not directly or indirectly disclose the identity or business of any person." *Id.* § 1387(d)(9).

The MMPA also requires public involvement in marine mammal protection processes mandated by the statute. For example, take reduction teams are required to meet in public to develop take reduction plans. *Id.* § 1387(f)(6)(D); *see also id.* § 1387(f)(1), (f)(7)(B) (requiring notice and opportunity for public review and comment of take reduction plans). Because the information these teams need to develop such plans is often available only through data collected by observers, this observer information must be made publicly available to comply with the MMPA's public involvement requirements. As the Service has long recognized, this observer information is not confidential under the MMPA. *See, e.g.*, 77 Fed. Reg. 30486, 30491–92 (May 23, 2012).

## III. The Magnuson-Stevens Fishery Conservation and Management Act

The MSA governs the conservation and management of fisheries in U.S. territorial waters and in the exclusive economic zone. 16 U.S.C. §§ 1801(b)(1), 1802(11). The Service is responsible for implementing and administering the MSA.

The MSA is built on the principle that the public must be able to participate meaningfully in fisheries management. *Id.* § 1801(b)(5) (purpose of the MSA includes enabling "consumer and environmental organizations, and other interested persons to participate in, and advise on," fisheries conservation and management processes), (c)(3) (policy of the MSA includes assuring that the fishery conservation and management program "involves, and is responsive to the needs of, interested and affected …

Pls.' Cross-Mot. Summ. J. & Opp'n to Defs.' Mot. Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-SLG

Case 3:24-cv-00279-SLG    Document 27    Filed 07/07/25    Page 12 of 43

citizens"). The MSA recognizes that fisheries information is "essential" for conservation and management. *Id.* § 1801(a)(8). The MSA also requires fishery management plans and regulations to be consistent with other applicable laws. *Id.* § 1854(a)(1), (b)(1), (c)(1).

The MSA sets forth confidentiality requirements for (1) information submitted to the Service by persons in compliance with requirements under the statute, *id.* § 1881a(b)(1), and (2) observer information collected pursuant to the statute, *id.* § 1881a(b)(2). But the MSA provides a variety of exceptions to these confidentiality requirements. For example, the MSA provides that information submitted by any person in compliance with MSA requirements is not confidential if the submitter consents to its release. *Id.* § 1881a(b)(1)(F). Observer information is also not confidential if the submitter of the observer information consents to its release. *Id.* § 1881a(b)(1)(F), (b)(2).[5]

The MSA also authorizes the Service to disclose otherwise confidential information in "any aggregate or summary form which does not directly or indirectly disclose the identity or business of any person who submits such information." 16 U.S.C. § 1881a(b)(3).

_____

[5] For information submitted to the Service pursuant to MSA requirements, the submitting party is the vessel permit holder. But permit holders do not "submit" observer information to the agency. Rather, "observer information" is "any information collected, observed, retrieved, or created by *an observer or electronic monitoring system* pursuant to authorization by the Secretary, or collected as part of a cooperative research initiative." *Id.* § 1802 (emphasis added). Consistent with this statutory text and the purpose of observer programs to collect independent information on the Service's behalf for conservation and management, *see id.* §§ 1802(31), 1853(b)(8), the Service's longstanding interpretation had been that observer information is not submitted by permit holders, *see* National Oceanic and Atmospheric Administration (NOAA) Administrative Order 216-100 § 6.04.a.1.(d). This makes sense: it would have been duplicative and unnecessary for Congress to separately address permit holders' submitted information under 16 U.S.C. § 1881a(b)(1) and observer information under *id.* § 1881a(b)(2), if permit holders submit both. The agency's recently issued regulations seemingly attempt to allow permit holders to control the release of observer information by newly subjecting its release to the consent of a person "subject to a [MSA] information submission requirement." 50 C.F.R. § 600.420(f) (Jan. 16, 2025). This novel interpretation does not apply to the responses at issue here and, more importantly, contradicts the plain language and intent of the MSA.

Because most information related to marine mammal take is non-confidential under the MMPA, *see supra* pp. 4–5, such information is also not confidential under the MSA. The Service has long recognized this to be the case.[6]

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Marine Mammal Bycatch in North Pacific Groundfish Fisheries

The North Pacific groundfish fishery—operating in the Bering Sea and Aleutian Islands and the Gulf of Alaska—is one of the largest fisheries in the world.[7] From 2019 to 2023, more than 600 vessels operated in this fishery per year.[8] Of these vessels, between 188 and 211 vessels with trawl gear caught groundfish in the North Pacific annually from 2019 to 2023.[9]

North Pacific groundfish fisheries catch a significant number of marine mammals in the course of their fishing operations. Between 2016 and 2020, almost 750 Alaska marine mammals experienced human-caused mortality or serious injury (i.e., any injury that will likely result in mortality).[10] Fishing gear caused around 60% of these deaths and

---

[6] *See, e.g.*, 50 C.F.R. § 600.10 (Jan. 16, 2025) ("[c]onfidential information [under the MSA] does not include observer information related to interactions with species protected under the [MMPA]: the date, time, and location of interactions, the type of species, and the fishing practices and gear involved provided that information regarding fishing practices and gear would not constitute a trade secret under [FOIA], 5 U.S.C. 552(b)(4)"); Email from Ned Cyr, Dir., Off. of Sci. & Tech., to Serv. Science Directors et al., Re: Data Aggregation and Summarization Guidelines (July 2, 2009) (Roy Decl., Ex. 1) [hereinafter, Cyr Email] (agency guidance directing staff to apply presumption that "the release of the following information associated with incidental takes of marine mammals or [Endangered Species Act (ESA)]-listed species will not disclose the identity or business of any person: the name and description of the fishery; the species of each marine mammal or ESA-listed species incidentally killed or injured; the date, time, and geographic location of the take; and non-proprietary information regarding gear used in the take," if there are at least three participants in the fishery).

[7] *See, e.g.*, Serv., *Groundfish Research In Alaska* (last updated Aug. 1, 2023) (Roy Decl., Ex. 2).

[8] Anna Abelman et al., *Stock Assessment and Fishery Evaluation Report for the Groundfish Fisheries of the Gulf of Alaska and Bering Sea/Aleutian Islands Area: Economic Status of the Groundfish Fisheries Off Alaska, 2023*, at 50 (Dec. 2, 2024) (Roy Decl., Ex. 3).

[9] *Id.* at 88, 124.

[10] J.C. Freed et al., *Human-Caused Mortality and Injury of NMFS-managed Alaska Marine Mammal Stocks, 2016-2020*, at 6–7, NOAA Tech. Mem. NMFS-AFSC-442 (Aug. 2022) (Roy Decl., Ex. 4).

serious injuries.[11] Observers reported 327 takes of Alaska marine mammals—82% of which resulted in death of the animal—in the North Pacific and West Coast groundfish fisheries from 2016 to 2020.[12]

Of the groundfish fisheries operating in the North Pacific, trawl fisheries are particularly harmful. Trawling—a non-selective fishing technique in which large boats drag enormous nets on or near the ocean floor, scooping up almost everything they encounter—is one of the most damaging and least sustainable fishing methods. The Service has designated groundfish trawl fisheries in the Bering Sea and Aleutian Islands as Category II fisheries under the MMPA, meaning that the agency has determined these fisheries cause occasional death or serious injury to marine mammals.[13] 16 U.S.C. § 1387(c)(1). These groundfish trawl fisheries have killed and injured humpback whales, gray whales, orcas, harbor porpoises, Pacific white-sided dolphins, bearded seals, harbor seals, Northern fur seals, ringed seals, ribbon seals, spotted seals, Steller sea lions, and walruses.[14] Many of these species, such as Steller sea lions, humpback whales, bearded seals, and ringed seals, are also listed as endangered or threatened under the ESA.

In recent years, North Pacific groundfish trawl fisheries have caught an alarming number of orcas. Trawl gear entanglements account for most of the reported orca entanglements in Alaska, and captured orcas have a very low chance of survival.[15] The

---

[11] *Id.*
[12] *Id.*
[13] Serv., *List of Fisheries Summary Tables* (May 19, 2025) (Roy Decl., Ex. 5).
[14] *Id.*
[15] Serv., *Killer Whale Entanglements in Alaska Summary Report: 1991-2022*, at 14, NOAA Tech. Mem. NMFS-F/AKR-32 (Dec. 2023) (Roy Decl., Ex. 6).

Pls.' Cross-Mot. Summ. J. & Opp'n to Defs.' Mot. Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-SLG

Case 3:24-cv-00279-SLG    Document 27    Filed 07/07/25    Page 15 of 43

Service reported that trawl fisheries in the Bering Sea caught eight orcas from 2020 to 2022.[16] All but one of the orcas were dead, and the only one released was seriously injured (and thus likely to die). In 2023, the Service reported that groundfish trawl fisheries in the Bering Sea and Aleutian Islands caught 10 orcas within the span of only four months.[17] Nine of the orcas were dead, six of which were determined to have been killed by fishing gear; the only one released alive was seriously injured.[18] This far exceeds the Service's outdated assumption that the trawl fisheries in the Bering Sea and Aleutian Islands take 0.6 orcas per year.[19] Trawler crews have reported increases in orcas present near their boats, suggesting that orca bycatch in these fisheries may continue.[20]

## II.     Oceana's FOIA Requests

Oceana submitted three FOIA requests to the Service seeking records related to North Pacific marine mammal bycatch. These records would allow Oceana and the public to understand how, why, and where bycatch occurs, as well as the severity of resulting injuries, and to help develop solutions to this problem. *See* Decl. of Tara Brock, ¶¶ 18–24.

### A.     April 2021 Request No. DOC-NOAA-2021-001424 (Request 1)

In April 2021, Oceana submitted a FOIA request to the Service, seeking, among other things, "[p]hotos … of all documented human-caused serious injury or mortality of

---

[16] *Id.* at 16.
[17] Serv., *Cause of Death Determined for 11 Killer Whales Incidentally Caught in Fishing Gear in Alaska in 2023* (Dec. 1, 2023) (Roy Decl., Ex. 7) [hereinafter Serv., *Cause of Death Determined*]; Serv., *Response to Recent Reports of Killer Whale Incidental Catches in Alaska* (Sept. 21, 2023) (Roy Decl., Ex. 8).
[18] Serv., *Cause of Death Determined*.
[19] Serv., *Alaska Groundfish Fisheries Final Programmatic Supplemental Environmental Impact Statement:Final Supplemental Information Report*, at 3.8-71 (Nov. 2015) (Roy Decl., Ex. 9).
[20] Groundfish Forum, *Statement on Unintentional Killer Whale Interactions* (Roy Decl., Ex. 10).

marine mammals in the federal North Pacific groundfish trawl fisheries from 2009 to present." Decl. of Jennifer Ferdinand, Ex. 1, ECF No. 24-2.

The Service sent an initial response that included previously released photos of orca bycatch. The photos included some redactions using black-out polygons, a redaction method that the agency had often used in previous years to redact claimed exempt information from photos of bycatch. *See* Figure 1. This level of redaction allowed Oceana to view the image of the animal in the context of industrial fishing operations.

After several meetings, Oceana and the Service agreed to a revised scope for the request. The Service stated that "[i]mages, including metadata, will be reviewed for confidential information (e.g., vessel name, crewmember faces, etc.) before being released." Ferdinand Decl., Ex. 4, ECF No. 24-5.

Subsequently, the Service made six releases of responsive records. These releases included many unredacted photos, *see* Figure 2, and photos minimally redacted using the black-out polygon method. But these releases also included numerous heavily redacted photos using a new pixelation redaction method (at times, the same PDF file included both redacted and unredacted images of the same animal). Brock Decl., ¶¶ 4–9. The new method removed far more information than was typically redacted when using the black-out polygon method. In many instances, the Service pixelated everything in the photo except the animal, meaning that all information necessary for viewers to understand the relationship between the animal becoming entangled, injured, and/or killed and the fishing operations that caused that harm were removed. Information about the gear that the animal was tangled in or injured by was removed. In several images, the pixelation

method distorted the image such that the animal shown was practically unrecognizable. *See* Figures 3–6. The Service invoked Exemption 3 on the asserted basis that the MSA prohibited the information from being released.

Oceana requested that the agency reconsider these redactions and provided the agency with examples of overly redacted photos. The Service denied the reconsideration request. The Service again invoked Exemption 3 and the MSA. But, to justify the use of the new pixelation method, the Service claimed that "the size and scope" of Oceana's FOIA request "required" the agency to "take a new approach to redaction by pixelating the background of the original images." Ferdinand Decl., Ex. 11, ECF No. 24-12; *see also* Ferdinand Decl. ¶¶ 40–41 (noting that pixelation "allowed a large savings of time").

Oceana timely administratively appealed the Service's determination regarding all responsive records where photos were released with pixelated backgrounds. More than nine months later, the Department of Commerce denied the appeal.



**Figure 1.** Photo released under Request 1, showing an orca on the deck of a vessel in mixed catch with black-out polygon method redactions.



**Figure 2.** Photo released under Request 1, showing a bearded seal on the deck of a vessel with fishing gear. The Service made no redactions to this photo.

Pls.' Cross-Mot. Summ. J. & Opp'n to Defs.' Mot. Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-SLG

Case 3:24-cv-00279-SLG     Document 27     Filed 07/07/25     Page 18 of 43



**Figures 3 to 6.** Photos released under Request 1, showing various marine mammals with all additional information and background redacted using a pixelation method.

### B.     October 2023 FOIA Request No. DOC-NOAA-2024-000011 (Request 2)

In October 2023, Oceana submitted a FOIA request seeking: (1) records associated with the take of orcas in North Pacific groundfish fisheries from 2019 to present including the observer report, self-report, latitude/longitude coordinates of the take, identification of the fishery involved in the take, and the date and time of the reported take; (2) records identifying the stock(s) of orcas for the above described takes, if known, or how the take will be assigned to stock(s) in the absence of identifying information; and (3) records describing any genetic information collected that is related to the above described takes. Brock Decl., Ex. 8.

Pls.' Cross-Mot. Summ. J. & Opp'n to Defs.' Mot. Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-SLG

Case 3:24-cv-00279-SLG     Document 27     Filed 07/07/25     Page 19 of 43

In response, the Service produced 37 records. The release included (1) several heavily pixelated photos and (2) spreadsheets with information such as location data, haul data, specimen numbers, and other data on fisheries' marine mammal take redacted. The Service again invoked Exemption 3 and the MSA.[21] Other photos in the release, however, were released without redaction. The release also included a fully redacted PDF file with 11 blacked-out pages, for which the Service asserted Exemption 7(A) but provided no description of the document or justification for invoking the exemption.

Oceana timely administratively appealed the Service's FOIA determination regarding the redacted and withheld records. To date, the Department of Commerce has not issued a determination on this appeal.



**Figure 7.** Photo released under Request 2, showing an orca with all additional information and background redacted using a pixelation method.

### C.   October 2023 Request No. DOC-NOAA-2024-000025 (Request 3)

Oceana submitted another FOIA request in October 2023, seeking "the release of any photos … of orca takes in Alaska groundfish fisheries from 2019 to present at the

---

[21] For releases in response to Requests 2 and 3, the Service marked the redactions with claimed Exemption 3(B), as shown in Figures 7–11, but this cannot be accurate. Exemption 3(B) applies only where another statute was enacted after the OPEN FOIA Act of 2009 and that statute specifically cites to Exemption 3(B). 5 U.S.C. § 552(b)(3)(B). The MSA was enacted prior to the OPEN FOIA Act of 2009.

highest resolution available." Brock Decl., Ex. 10. The request asked the agency to include photos that show the animals in the water, within the trawl net or other gear, in mixed catches, or on-deck with the background imagery visible so the viewer can determine the context and setting of the photo; and that the photos be labeled with the name of the fishery, date, and finest-scale spatial location known including latitude and longitude.

In response, the Service produced 15 records but withheld most of the information in the records via its new pixelation method, again invoking Exemption 3 and the MSA. None of the photos were labeled with the name of the fishery, date, or location as requested.



**Figures 8 to 11.** Photos released under Request 3, showing various marine mammals with all additional information and background redacted using a pixelation method.

Oceana timely administratively appealed the Service's determination regarding all records where photos were released with pixelated backgrounds. To date, the Department

Pls.' Cross-Mot. Summ. J. & Opp'n to Defs.' Mot. Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-SLG

Case 3:24-cv-00279-SLG    Document 27    Filed 07/07/25    Page 21 of 43

of Commerce has not issued a determination on this appeal.

## STANDARD OF REVIEW

FOIA provides this Court with jurisdiction to enjoin federal agencies "from withholding agency records and to order the production of any agency records improperly withheld from" the requester. 5 U.S.C. § 552(a)(4)(B). Courts review agencies' responses to plaintiffs' FOIA requests de novo. *Id.* The agency bears the burden of establishing the applicability of any exemption as to each record for which the exemption is claimed, and of demonstrating reasonable segregability of non-exempt portions of each record. *See id.* § 552(a)(4)(B), (b); *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009).

## ARGUMENT

The Service does not meet its burden under FOIA to establish that its redactions and withholdings are lawful. First, as a threshold matter, the Service has not provided the requisite *Vaughn* index or non-conclusory agency declarations in support of its assertions that Exemption 3 and 7(A) apply to the requested records. Second, the Service fails to show that Exemption 3 applies to the redacted information. Both FOIA and the MMPA require disclosure because the agency has not established that the redacted information is "proprietary observer information" that cannot be released without directly or indirectly disclosing the identity or business of any person. Assuming the MSA is even applicable here, that statute also does not specifically prohibit disclosure of the redacted information because release of that information would not disclose the identity or business of any submitter, vessel, or crew. Indeed, the fact that the Service released unredacted or minimally redacted photos in response to these same FOIA requests undercuts the

Pls.' Cross-Mot. Summ. J. & Opp'n to Defs.' Mot. Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-SLG

Case 3:24-cv-00279-SLG   Document 27   Filed 07/07/25   Page 22 of 43

agency's claim that the MSA requires extensive redactions in other substantially similar photos. Third, the Service fails to show that Exemption 7(A) applies to the withheld record. And fourth, even assuming that some information is properly exempt here, the Service fails to reasonably segregate all non-exempt information.

## I. The Service Has Not Provided the Detail or Specificity Required to Meet Its Burden to Justify the Claimed Exemptions.

The Service has not provided the requisite justification to carry its burden of demonstrating that the redacted and withheld records are exempt under FOIA. First, the Service has provided no *Vaughn* index describing each redacted or withheld document and detailing why it is exempt. Second, the one declaration the Service has provided contains only conclusory and unsupported assertions and is therefore insufficient.

Because FOIA cases concern the issue of whether one party will disclose documents to the other, "only the party opposing disclosure will have access to all the facts." *Wiener v. F.B.I.*, 943 F.2d 972, 977 (9th Cir. 1991). Thus, "[g]overnment agencies seeking to withhold documents requested under the FOIA are required to supply the opposing party with a *Vaughn* index 'identifying each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption.'" *Kucernak v. F.B.I.*, 129 F.3d 126 (9th Cir. 1997) (citing *Wiener*, 943 F.2d at 977); *see King v. U.S. Dep't of Just.*, 830 F.2d 210, 223–24 (D.C. Cir. 1987) (*Vaughn* indexes "must describe *each* document or portion thereof withheld, and for *each* withholding it must discuss the consequences of disclosing the sought-after information."). The purpose of the *Vaughn*

index is to afford requesters a meaningful opportunity to intelligently contest agencies'

withholding decisions and to give the court an adequate foundation to review the

soundness of the withholdings. *Wiener*, 943 F.2d at 977. "Specificity is the defining

requirement of the *Vaughn* index." *Id.* at 979 (quoting *King*, 830 F.2d at 219).

Despite acknowledging the importance of *Vaughn* indexes in FOIA cases, *see*

Def's Mot. Summ. J. (Serv. Br.) 13, the Service did not submit such an index. Nowhere

does the Service describe each redacted or withheld document or discuss, for each

withholding, the consequences of disclosing the information. *See King*, 830 F.2d at 223.

The Service has extensively redacted hundreds of photos and other records, and withheld

one document in its entirety. For many of the photos, the Service pixelated everything in

the photo except the animal.[22] The spreadsheets too redact various types of information.

The Service's failure to provide a *Vaughn* index deprives Oceana of a meaningful

opportunity to challenge these numerous withholdings and this Court of its ability to

review the validity of the Service's claims.

In lieu of a *Vaughn* index, the Service submitted one agency declaration, which

too is inadequate. An agency's declarations must describe "the documents and the

justifications for nondisclosure with reasonably specific detail, demonstrate that the

information withheld logically falls within the claimed exemption, and are not

controverted by either contrary evidence in the record nor by evidence of agency bad

faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see Perry v.*

---

[22] Although Oceana's challenge here focuses on photos that were heavily redacted via pixelation, the Service should also be required to provide *Vaughn* index explanations for photos redacted via the blackout polygon method.

Pls.' Cross-Mot. Summ. J. & Opp'n to Defs.' Mot. Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-SLG

Case 3:24-cv-00279-SLG    Document 27    Filed 07/07/25    Page 24 of 43

*Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (courts do not accept "glib government assertions" in declarations). The declarations "must not be conclusory," and must appear logical and plausible. *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008); *Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 774 (9th Cir. 2015). Any "description and explanation the agency offers should reveal as much detail as possible as to the nature of the document," in order to provide "the requestor with a realistic opportunity to challenge the agency's decision." *Oglesby v. U.S. Dept. of Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996). Declarations must be "detailed enough to allow the court to make an independent assessment of the government's claim." *Lane v. Dep't of Interior*, 523 F.3d 1128, 1135 (9th Cir. 2008).

Only about three pages of the 12-page declaration discuss the Service's redactions and withholdings of hundreds of records, and only a few paragraphs even purport to advance any justifications for the exemptions the agency claimed. Ferdinand Decl. 9–12. As discussed below, the declaration contains only conclusory and unreasoned statements. Thus, the Service has not met its burden to establish that its claimed exemptions apply.

## II. The Service Has Not Met Its Burden to Show That Exemption 3 Applies to the Redacted Information.

The Service fails to show that Exemption 3 applies to Oceana's requested records. FOIA allows agencies to exempt records that are "specifically exempted from disclosure by" another statute, if that statute requires matters be withheld in such a manner as to leave no discretion on the issue, or establishes particular criteria for withholding or refers to particular types of matters to be withheld. 5 U.S.C. § 552(b)(3). For Exemption 3 to

Pls.' Cross-Mot. Summ. J. & Opp'n to Defs.' Mot. Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-SLG
18

Case 3:24-cv-00279-SLG    Document 27    Filed 07/07/25    Page 25 of 43

apply, the agency must show that the requested information falls within the scope of the information specifically exempted from disclosure by the other statute. *Carlson v. U.S. Postal Serv.*, 504 F.3d 1123, 1127 (9th Cir. 2007). Courts do not defer to agencies in determining whether the requested information falls within the scope of the other statute. *Id.* at 1126–27; *see Lessner v. U.S. Dep't of Com.*, 827 F.2d 1333, 1335 (9th Cir. 1987) ("A basic policy of FOIA is to ensure that Congress and not administrative agencies determines what information is confidential. Given the court's responsibility to ensure that agencies do not interpret the exemptions too broadly, deference appears inappropriate in the FOIA context.").

Here, the redacted information in the photos, the photos' metadata, and the spreadsheets do not fall within the scope of the information that the MMPA (which is the governing statute here) deems confidential. The Service has not shown that the redacted information is confidential proprietary observer information or, even if it were, that disclosure has any reasonable or practical risk of revealing identities of vessels or persons. To the extent that the MSA is even relevant here, the Service has, for similar reasons, failed to meet its burden of showing that the redactions fall within the scope of information exempted by the statute. The Service's inconsistent invocation of Exemption 3 also undermines its claims.

A.     **FOIA and the MMPA Require Release of the Redacted Information.**

As a threshold matter, the MMPA—not the MSA—is the relevant statute in this case. Oceana is solely challenging the Service's decision to redact and withhold photos and other records on *marine mammal take*. The MMPA governs these records: the

Service collects observer information on fisheries' marine mammal take pursuant to the MMPA, 16 U.S.C. § 1387(d), and the MMPA also requires fisheries to report all marine mammal incidental mortality and injury to the Service, *id.* § 1387(e). Despite this, the Service fails entirely to discuss the MMPA. The Service's claim to exemption focuses solely on the MSA, without explaining why the MSA is relevant here when the records concern marine mammal take governed by the MMPA. *Id.* § 1387(d), (e); *see Kamman v. U.S. I.R.S.*, 56 F.3d 46, 49 (9th Cir. 1995) (rejecting agency's conclusory and generalized assertion that requested documents fall within scope of information deemed confidential by statute prohibiting disclosure per FOIA Exemption 3).

The redacted information in the requested records is not exempt from disclosure under the MMPA. First, any withheld information regarding the fisheries' incidental mortality and injury of marine mammals, including the species killed or injured and the date, time, and geographic location of such occurrence, is non-confidential under the MMPA. 16 U.S.C. § 1387(e). Second, the MMPA designates only proprietary observer information as confidential, subject to certain exceptions. *Id.* § 1387(d)(8). The Service is *required* to "release or make public upon request" any such proprietary observer information "in aggregate, summary, or other form which does not directly or indirectly disclose the identity or business of any person." *Id.* § 1387(d)(9).

The Service has not met its burden to show that the redacted imagery and metadata in the photos and the redacted information in the spreadsheets constitute (1) proprietary observer information under the MMPA that (2) cannot be released in some form without directly or indirectly disclosing the identity or business of any person. Nothing in the

Pls.' Cross-Mot. Summ. J. & Opp'n to Defs.' Mot. Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-SLG

Case 3:24-cv-00279-SLG     Document 27     Filed 07/07/25     Page 27 of 43

record suggests that the redacted information constitutes proprietary observer information—i.e., observer information that would disclose a permit holder's protected property interests. *See supra* n.4. But even assuming it did, the Service fails to meet its burden to show that this information cannot be released in some form without disclosing identities or businesses of persons.

### 1. Pixelated redactions in photos

The Service has not claimed nor shown that the information redacted via extensive pixelation in the photos constitutes proprietary observer information pursuant to the MMPA. To the extent that the redacted information identifies the fishery, the date and time and geographic location of the take, and the gear used, that information is not exempt from disclosure. 16 U.S.C. § 1387(e); *see, e.g.*, 50 C.F.R. § 600.10 (Jan. 16, 2025), Cyr Email.

But even assuming that photos contained proprietary observer information, the Service fails to show that disclosure would directly or indirectly disclose the identity or business of a person. Oceana is not seeking information in the photos that would reveal vessel names or persons' faces or names. Therefore, there is no risk of direct disclosure of identities or businesses of any person.

According to the Service, "[m]ost of the redactions applied were due to the indirect risk of … disclosure." Ferdinand Decl. ¶ 35. But the Service fails to meet its burden to establish that disclosure of the pixelated information would indirectly reveal identities. Courts reject agencies' assertions that disclosure would lead to indirect identification of persons or entities where the agency has not provided sufficient or non-

Pls.' Cross-Mot. Summ. J. & Opp'n to Defs.' Mot. Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-SLG

Case 3:24-cv-00279-SLG    Document 27    Filed 07/07/25    Page 28 of 43

speculative evidence demonstrating the practical risk of such identification. *See, e.g.*, *Willamette Indus., Inc. v. United States*, 689 F.2d 865, 868 (9th Cir. 1982) (in Exemption 3 case, finding agency's indirect identification claim to be "too speculative and not supported by facts" because, although agency's expert "testified that in certain circumstances a knowledgeable person in the industry might be able to identify" persons, "no specific evidence was given as to how often this danger of indirect identification might exist"); *Rosenfeld v. U.S. Dep't of Just.*, 57 F.3d 803, 813 (9th Cir. 1995) (in the context of Exemption 7's protection from unwarranted invasion of privacy, affirming district court's finding that disclosure of police officer's first name was "not likely to identify the party" because any search to identify the person from that information would be "impracticable"); *Scarlett v. Off. of Inspector Gen.*, No. 21-819, 2023 WL 2682259, at *11 (D.D.C. Mar. 29, 2023) (finding agency had not provided "a sufficiently detailed explanation" for risk of direct or indirect identification).

Here, the Service's claims regarding indirect disclosure from revealing the photos' background information are conclusory and implausible. *See, e.g.*, *Pac. Fisheries, Inc.*, 539 F.3d at 1148; *Hamdan*, 797 F.3d at 774; *see also Carlson*, 504 F.3d at 1126–27.

First, the agency declaration claims that "only a limited number of vessels would have been included in the search (particularly for Request 1), making any imagery supplied containing a higher risk of potentially revealing identities of vessels or people." Ferdinand Decl. ¶ 37. The Service provides no details regarding what "a limited number" of vessels means. "Limited" here could presumably mean one or two vessels, or possibly thousands of vessels. This is insufficient to establish risk of disclosure. *See, e.g.*,

Pls.' Cross-Mot. Summ. J. & Opp'n to Defs.' Mot. Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-SLG

Case 3:24-cv-00279-SLG   Document 27   Filed 07/07/25   Page 29 of 43

*Willamette*, 689 F.2d at 868; *Forest Guardians v. U.S. Dep't of Interior*, No. 02-1003, 2004 WL 3426434, at *16 (D.N.M. Feb. 28, 2004) (agency did not meet burden of showing identification risk because agency failed to "state what minimal number of permittees in a field office—1, 2, 10, etc.—would make it possible for [plaintiff] to link an individual permittee with the disclosed information").

Moreover, according to the Service's own data, for each year from 2019 to 2023, there were more than 600 vessels catching groundfish in the North Pacific. *See supra* p. 7. Given this sheer number of vessels, it is highly speculative that background imagery depicting bits and pieces of a vessel or gear presents any risk of identifying the exact vessel, or exact persons on that vessel, among hundreds of vessels. Each of Oceana's requests also sought photos over multiple years (Request 1 sought photos from 2009 to 2021; Requests 2 and 3 sought records from 2019 to 2023), making identification even more unlikely because the search would have included not just the vessels fishing annually but all the vessels over the multiple-year periods.

It is also unclear why Request 1, which sought photos from North Pacific groundfish trawl fisheries from 2009 to 2021, would in particular implicate a limited number of vessels. Around 200 vessels catch groundfish in the North Pacific with trawl gear each year. *See supra* p. 7. Given this high number of vessels and the timeframe of the request (up to 12 years), the Service fails to show a practical risk of identification of any given vessel or person.

Second, the declaration claims with no evidence that the increasing capabilities of technologies, internet resources, and artificial intelligence (AI) mean that "a small release

of imagery showing a vessel's gear, structure, or features can be expected to provide sufficient information for the vessel to be identified, even by those without preexisting knowledge of the vessels, fleet, or industry." Ferdinand Decl. ¶ 38. The Service bears the burden to establish such technologies present disclosure risks, and has not done so here. *See, e.g.*, *Pac. Fisheries, Inc.*, 539 F.3d at 1148; *Hamdan*, 797 F.3d at 774. For example, the Service does not detail which existing technologies or AI capabilities would realistically allow members of the public to perform this re-identification exercise. The Service's suggestion that the potential for future increased capabilities and use of technologies warrant withholding of this information is even more speculative. The Service also has not asserted or shown that there are publicly available images of each of these vessels such that a member of the public would be able to re-identify the vessels. Nor does the Service assert or establish that each of these more than 600 vessels have such unique features that re-identification of individual vessels by comparing the requested photos with publicly available information would be possible.

Even where agencies have presented arguments detailing how re-identification from the withheld information would occur, courts reject such arguments if the risk is too speculative or if no practical risk of identification is present. *See, e.g.*, *Rosenfeld*, 57 F.3d at 813; *Am. C.L. Union Found. of Arizona v. U.S. Dep't of Homeland Sec.*, No. 14-02052, 2017 WL 8895339, at *24 (D. Ariz. Jan. 26, 2017) (risk of disclosure too attenuated due to "the impracticality of determining the identity of persons from reference to their citizenship, nationality and/or complexion referenced in the records at issue, especially in light of the fact that [direct] identifying information will remain redacted"); *Am. C.L.*

Pls.' Cross-Mot. Summ. J. & Opp'n to Defs.' Mot. Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-SLG

Case 3:24-cv-00279-SLG     Document 27     Filed 07/07/25     Page 31 of 43

*Union v. Dep't of Def.*, 389 F. Supp. 2d 547, 572 (S.D.N.Y. 2005) ("If, because someone sees the redacted pictures and remembers from earlier versions leaked to, or otherwise obtained by, the media that his image, or someone else's, may have been redacted from the picture, the intrusion into personal privacy [under Exemptions 6 and 7(C)] is marginal and speculative, arising from the event itself and not the redacted image."); *Block & Leviton LLP v. Fed. Trade Comm'n*, No. 19-12539, 2020 WL 6082657, at *6 (D. Mass. Oct. 15, 2020) (company's argument that "readers could reverse-engineer [company's] commercial priorities by tracking changes in the settlement terms from draft to draft likely stretches Exemption 4 too far").

Third, the Service provides no explanation for why, in many photos, everything has been redacted other than the marine mammal. The Ferdinand Declaration does not explicitly proclaim that everything in the photos—including, in some cases, what appears to be the sky, water, or fish—except the animal are exempt. Nor would such a claim be logical. Yet that is exactly what the Service has redacted here.

## 2. Photo metadata of fishery name, date, and location

The Service's brief suggests that the requested metadata is exempt because this information, combined with background visual information in the photos (which, as discussed above, the Service also withheld), poses a risk of indirectly identifying persons. Serv. Br. 8. But metadata revealing the fishery name, date, time, and geographic location of marine mammal take is not exempt from disclosure under the MMPA. 16 U.S.C. § 1387(e); *see also, e.g.*, 50 C.F.R. § 600.10 (Jan. 16, 2025); Cyr Email.

The Service's claim is also unsupported by the agency's own declaration. *See Kamman*, 56 F.3d at 48 (courts rely on *agency declarations* (not counsel's assertions that have no declaration support) to determine whether burden under FOIA is satisfied). The declaration does not assert that metadata information, combined with the photos, poses risk of indirect identification. It only states, in a conclusory manner, that the photos were "cleaned of confidential metadata," and otherwise provides no justification for the withholding of metadata regarding the fishery, date, and location. Ferdinand Decl. ¶ 39.

It is also unreasonable to assert that anyone would be able to identify vessels or persons from metadata that merely reveals the fishery, the date of the take, and the location of the take. In addition to the fact that there are more than 600 vessels catching groundfish in the North Pacific per year, fishing vessels are mobile and operate across thousands of miles in the region. The agency's suggestion that data disclosing where a marine mammal take occurred on a particular date years ago could allow a member of the public to identify the vessel or any persons on that vessel is highly speculative at best, and cannot justify withholding the data.

### 3. Redacted information in the spreadsheets

The Service redacted a variety of information from the spreadsheets, including what appears to be location data (e.g., "NMFS Area" and longitude and latitude where the marine mammal bycatch occurred). The Service also redacted information such as specimen numbers, haul information, and other details associated with the marine mammal take. It is unclear from the face of the spreadsheets what many of the other

Pls.' Cross-Mot. Summ. J. & Opp'n to Defs.' Mot. Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-SLG

Case 3:24-cv-00279-SLG    Document 27    Filed 07/07/25    Page 33 of 43

redactions are (and there is no *Vaughn* index describing these redactions). Nowhere does the Service provide explanations for why any of this information was redacted.

Any information in the spreadsheets regarding the date, time, and location of marine mammal take, as well as all information that is not proprietary observer information that would disclose the identity or business of persons, is not exempt from disclosure under the MMPA. *See supra* pp. 4–5, 19–21. As discussed above, location data would not disclose the identity or business of any person. *See supra* pp. 25–26.

**B.     The MSA Does Not Exempt the Redacted Information.**

The Service has not shown that the MSA governs the marine mammal take records requested by Oceana. *See supra* pp. 19–20. The MSA sets forth confidentiality requirements, subject to a variety of exceptions, for (1) certain information submitted to the Service by any person *in compliance with MSA requirements* and (2) certain observer information *collected under the MSA*. 16 U.S.C. § 1881a(b). The Service has provided no evidence that the records at issue here were submitted to the agency pursuant to MSA's requirements or collected by observers under the MSA. *See Kamman*, 56 F.3d at 49.

Even assuming that the MSA is relevant here, the redacted information does not fall within the scope of information deemed exempt from disclosure under the MSA. First, as a general matter, marine mammal take information is not confidential under the MSA. Such information (other than proprietary observer information that cannot be released in a form that obscures identities or businesses of persons) is public information under the MMPA, and in fact is often required to be made public under the statute's provisions. *See supra* pp. 4–5. The Service itself recognizes that reported and observer

marine mammal take data—including the name and description of the fishery; the date, time, and location of the take; and the fishing practices and gear involved—is not confidential under the MSA. *See supra* p. 7.

Second, even assuming that some submitted and observer information on marine mammal take could theoretically be confidential under the MSA, the statute expressly authorizes the Service to release otherwise confidential information in "any aggregate or summary form which does not directly or indirectly disclose the identity or business of any person *who submits such information*." 16 U.S.C. § 1881a(b)(3) (emphasis added). As discussed above, *see supra* n.5, the information sought here was not submitted by permit holders; it was collected by observers on behalf of the Service. There is no possibility of direct disclosure of submitters' identity or business here. Moreover, because Oceana is not seeking vessel names or persons' names, faces, or addresses, there is no possibility of directly disclosing the identity or business of any vessel or crew involved in the observed fishing operations. Nor would disclosure of the redacted information indirectly disclose the identities or businesses of any submitter, vessel, or crew. *See supra* pp. 21–27.

### C. The Service's Inconsistent Invocation of Exemption 3 Undermines Its Argument that the Redacted Information Is Exempt.

Exemption 3 only applies to information "specifically exempted from disclosure by" another statute. 5 U.S.C. § 552(b)(3). Despite claiming that the MSA prohibits disclosure of the redacted information in the photos, the Service released numerous unredacted, or minimally redacted, photos in response to Oceana's FOIA requests. These

28

photos reveal vessel areas, gear layout, observer sampling stations, and more—the same

information that the Service claims is exempt under the MSA in the extensively-pixelated

photos. The Service says nothing to explain this inconsistency. The Service does not

show how it is possible that the MSA does not prohibit disclosure of the unredacted or

less redacted photos but does prohibit disclosure of the pixelated photos. Nor does it

explain why some photos would reveal the identity or business of the submitting party

but other substantively similar photos would not. *See, e.g.*, *Jaffe v. Cent. Intel. Agency*,

516 F. Supp. 576, 581 (D.D.C. 1981) ("[agency's] practice in this case of withholding

entire paragraphs … is seriously undermined by its inconsistent application, both in this

proceeding, as well as in two other FOIA matters currently before this Court").

In sum, the Service has not met its burden to show that Exemption 3 applies here.

## III. The Service Has Not Met Its Burden to Show that Exemption 7(A) Applies to the Withheld Record.

The Court should also reject the Service's invocation of Exemption 7(A) because

the agency entirely fails to justify this exemption. Exemption 7(A) permits an agency to

withhold "records or information compiled for law enforcement purposes, but only to the

extent that the production of such law enforcement records or information … could

reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. §

552(b)(7)(A). First, the agency must establish that it is a law enforcement agency and that

the withheld records were compiled for law enforcement purposes. *See Lewis v. I.R.S.*,

823 F.2d 375, 379 (9th Cir. 1987). Second, the agency must demonstrate that "disclosure

(1) could reasonably be expected to interfere with (2) enforcement proceedings that are

(3) pending or reasonably anticipated." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 746 F.3d 1082, 1096 (D.C. Cir. 2014) (citation omitted). The Service fails to make either of these showings. The Service also fails to claim or show that disclosure would result in reasonably foreseeable harm. 5 U.S.C. § 552(a)(8)(A)(i).

First, the Service fails to show that the withheld record was compiled for law enforcement purposes. "To determine whether records are compiled for law enforcement purposes," courts focus on "how and under what circumstances the requested files were compiled and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Clemente v. F.B.I.*, 867 F.3d 111, 119 (D.C. Cir. 2017) (cleaned up). Agency declarations "must establish a connection between the assertedly exempt records and an inquiry into a possible security risk or violation of federal law." *Id.* (cleaned up). "Exemption 7 cannot be used as 'pretext' to withhold documents related to 'generalized monitoring and information-gathering that are not related to the [agency's] law enforcement duties.'" *Am. C.L. Union of N. Cal. v. F.B.I.*, 881 F.3d 776, 779 (9th Cir. 2018) (citation omitted).

When an agency with "mixed" administrative and law enforcement functions (unlike an agency with a primary law enforcement mandate) withholds records, courts apply a more "exacting standard." *Tax Analysts v. I.R.S.*, 294 F.3d 71, 77 (D.C. Cir. 2002) (citations omitted). A mixed function agency "must demonstrate that it had a purpose falling within its sphere of enforcement authority in compiling the particular document." *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 748 (9th

Pls.' Cross-Mot. Summ. J. & Opp'n to Defs.' Mot. Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-SLG

Case 3:24-cv-00279-SLG   Document 27   Filed 07/07/25   Page 37 of 43

Cir. 1979), *overruled on other grounds*, *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016).

Courts routinely reject Exemption 7 claims where the agency has failed to provide adequate detail establishing the law enforcement purpose behind the compilation of the withheld records. *See, e.g.*, *Am. Ctr. for L. & Just. v. U.S. Dep't of Just.*, 334 F. Supp. 3d 13, 18 (D.D.C. 2018) (rejecting Exemption 7 claim where agency broadly stated that withheld documents were compiled in the course of its investigation, without making specific statements as to why the document was created for such a purpose); *Windel v. United States*, No. 02-00306, 2005 WL 846206, at *3 (D. Alaska Apr. 11, 2005) (finding agency had not shown information was compiled for law enforcement purposes where agency had not adequately described what proceedings took place, what officials were seeking to enforce, and the sanctions available); *Parker v. U.S. Dep't of Just. Exec. Off. for U.S. Att'ys*, 852 F. Supp. 2d 1, 11 (D.D.C. 2012) (finding that agency "must actually provide evidence that the disciplinary investigation focused on illegal activity which could result in civil or criminal sanctions"); *United Am. Fin., Inc. v. Potter*, 531 F. Supp. 2d 29, 45 (D.D.C. 2008) (declaration only reciting Exemption 7's requirement and identifying an ongoing investigation "falls far short").

The Service is a mixed function agency. *See supra* pp. 4–5 (describing the agency's duties). As such, the Service must satisfy a more exacting scrutiny and show that the withheld record was compiled for law enforcement purposes within the Service's proper authority. But the Service fails to meet even the more deferential standard, let alone the more exacting one. The Service only states that "[t]he fully redacted document

Pls.' Cross-Mot. Summ. J. & Opp'n to Defs.' Mot. Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-SLG
Case 3:24-cv-00279-SLG   Document 27   Filed 07/07/25   Page 38 of 43

… was a document produced in the course of a law enforcement investigation."
Ferdinand Decl. ¶ 32. The Service provides no details as to what the withheld document
is or entails, what the "law enforcement investigation" is or entails, how and for what
purpose the withheld document was compiled, and how withheld document relates to the
investigation. The Service also provides no details about whether the document was
compiled for enforcement within the Service's authority.

Second, the Service provides no evidence that the "law enforcement investigation"
was pending or reasonably anticipated, or that the release of the withheld document
would reasonably be expected to cause some articulable harm to that proceeding. The
agency is required to "explain, publicly and in detail, how releasing each of the withheld
documents would interfere with the government's ongoing" enforcement investigation.
*Lion Raisins v. U.S. Dep't of Agric.*, 354 F.3d 1072, 1084 (9th Cir. 2004), *overruled on
other grounds*, *Animal Legal Def. Fund*, 836 F.3d at 987. The agency's declaration "must
provide as much factual support for [its] position as possible without jeopardizing [its]
legitimate law enforcement interest in withholding the documents, and it must be detailed
enough for the district court to make a *de novo* assessment of the government's claim of
exemption." *Id.* (cleaned up).

Nothing in the Ferdinand Declaration touches on these elements. The conclusory
claim in the Service's brief that the investigation is ongoing and poses a risk of
interference lacks record support. Serv. Br. 19. The Service cites only to an agency
response letter, where the Service had merely recited Exemption 7(A)'s requirement
without providing any detail as to how the withheld record meets this requirement. *Id.*

Pls.' Cross-Mot. Summ. J. & Opp'n to Defs.' Mot. Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-SLG

Case 3:24-cv-00279-SLG    Document 27    Filed 07/07/25    Page 39 of 43

Third, the Service fails to assert or identify any foreseeable harm associated with releasing this document. 5 U.S.C. § 552(a)(8)(A)(i); *see Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021). Thus, the Service falls far short of meeting its burden to show the withholding is appropriate.

## IV.  The Service Did Not Reasonably Segregate All Non-Exempt Information.

Even assuming that the records at issue contain some exempt information, the Service has not shown that all the withheld information constitute entirely exempt, non-segregable material. 5 U.S.C. § 552(b) (any "reasonably segregable portion" of a record must be disclosed to a requester). Agencies must "offer[] an affidavit with reasonably detailed descriptions of the withheld portions of the documents and alleging facts sufficient to establish an exemption." *Pac. Fisheries, Inc.*, 539 F.3d at 1148. Where large proportions of the information in a record is non-exempt, courts "require a high standard of proof for an agency claim that … disclosure of the non-exempt material would indirectly reveal the exempt information." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

The Service has not met its burden to demonstrate that it was reasonable to remove the entire context of fishing operations from the photos. Although the Service's brief claims that the agency applied redactions "only to the extent necessary to protect exempt information," Serv. Br. 20, it defies logic that everything in the pixelated photos except the marine mammal, including what appears to be the sky or the water, is exempt. In any case, the agency did not perform an adequate segregability analysis detailing, for each record, "which portions of the document are disclosable and which are allegedly

exempt." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 90 (D.D.C 2009) (citation omitted).

Moreover, although the Service claims that its new pixelation method allows for "more precise drawing of the line between the protected and unprotected information," Ferdinand Decl. ¶ 41, such precision was not used here. A comparison between the photos redacted using the black-out polygon approach and the pixelated photos shows that the former resulted in more selective redaction with minimal disruption to the image. *Compare* Figure 1 *with* Figures 3–11.[23] The overbroad pixelation method does not constitute reasonable segregation under FOIA.

## REMEDY

Because the Service has not met its burden to establish that disclosure of the redacted and withheld information is proper under FOIA, the Court should order the Service to immediately release all responsive records (with only vessel names and persons' names, faces, and addresses redacted). To the extent the Service redacts vessel names or persons' names, faces, and addresses, the Court should require the Service to submit a *Vaughn* index describing each of these redactions.

In the alternative, the Court should review the records *in camera* and order the Service to release all non-exempt information, and order the agency to produce a *Vaughn*

---

[23] The record suggests that the Service's decision to switch to the pixelation method was driven by the "size and scope" of Oceana's request, not because of a desire to more precisely disclose non-exempt information. *See supra* p. 11; *see also* Ferdinand Decl., Ex. 2, ECF No. 24-3. The Service has not asserted here that the size or scope of Oceana's request was so large as to render a proper segregability exercise unreasonable. Nor would such a claim have merit, especially given that the Service only produced 1,248 records, many of which Oceana is not challenging because they were not redacted or only minimally redacted. *See, e.g.*, *Anderson v. CIA*, 63 F. Supp. 2d 28, 30 (D.D.C. 1999) ("[t]he duty to segregate does not depend on the volume of documents").

index and adequate declarations for redacted or withheld records. *In camera* review of the records here is particularly appropriate because the Service has failed to provide a *Vaughn* index, its declaration does not include sufficiently detailed and non-conclusory explanations, and its redactions are inconsistent. *See, e.g.*, *Islamic Shura Council of S. Cal. v. F.B.I.*, 635 F.3d 1160, 1166 (9th Cir. 2011) ("If the [agency's] affidavits are too vague, the court 'may examine the disputed documents *in camera* to make a first hand determination of their exempt status.'" (quoting *Lane*, 523 F.3d at 1135–36)); *Quinon v. F.B.I.*, 86 F.3d 1222, 1229 (D.C. Cir. 1996) ("[W]here an agency's affidavits merely state in conclusory terms that documents are exempt from disclosure, an *in camera* review is necessary."). But *in camera* review "is not an acceptable substitute for an adequate *Vaughn* index," so the Court should also order the Service to file a *Vaughn* index and adequate declarations for its redactings and withholdings. *Wiener*, 943 F.2d at 979 ("*In camera* review may supplement an adequate *Vaughn* index, but may not replace it.").

## CONCLUSION

For the foregoing reasons, Oceana respectfully requests that the Court order the Service to immediately disclose the requested information; to the extent the Service redacts vessel names or persons' names, faces, and addresses, the Court should order the Service to submit a *Vaughn* index for these redactions. In the alternative, the Court should review the documents *in camera* and order the Service to release all non-exempt information and order the Service to submit a *Vaughn* index and adequate justifications for any redactions and withholdings.

Pls.' Cross-Mot. Summ. J. & Opp'n to Defs.' Mot. Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-SLG

Case 3:24-cv-00279-SLG    Document 27    Filed 07/07/25    Page 42 of 43

Respectfully submitted this 7th day of July, 2025.

/s/ Rumela Roy
Rumela Roy (*pro hac vice*)
EARTHJUSTICE
633 17th Street, Suite 1600
Denver, CO 80202
303-996-9623 Telephone
rroy@earthjustice.org

Andrea A. Treece (*pro hac vice*)
EARTHJUSTICE
180 Steuart St. #194330
San Francisco, CA 94105
415-217-2000 Telephone
atreece@earthjustice.org

*Counsel for Plaintiff Oceana, Inc.*

Pls.' Cross-Mot. Summ. J. & Opp'n to Defs.' Mot. Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-SLG

Case 3:24-cv-00279-SLG    Document 27    Filed 07/07/25    Page 43 of 43