Oliver J. H. Stiefel, OSB #135136
(503) 227-2212 | oliver@crag.org
Alexandria Dolezal, OSB #223924
(503) 224-0788 | alexandria@crag.org
CRAG LAW CENTER
3141 E. Burnside St.
Portland, Oregon 97214

    *Applicants Pro Hac Vice*

    *Attorneys for Amici Curiae*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| OCEANA, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>NATIONAL MARINE FISHERIES SERVICE,<br><br>    Defendant. | Case No. 3:24-CV-00279-SLG |

## TRIBAL AMICI'S BRIEF IN SUPPORT OF PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

FACTUAL BACKGROUND ....................................................................................................... 2

LEGAL BACKGROUND ............................................................................................................. 3

    I.    The Freedom of Information Act Favors Disclosure of Information, and Exemptions Must be Construed Narrowly. ............................................................................................ 3

    II.    Information about Vessel Interactions with Marine Mammals is Necessary to Carry Out the Purposes of the Marine Mammal Protection Act. ......................................................... 4

    III.    Confidentiality Provisions Under the Magnuson-Stevens Fishery Conservation and Management Act are Narrow. ............................................................................................. 6

ARGUMENT ................................................................................................................................. 7

    I.    Defendants' Position Elevates Narrow Exceptions Over the Purposes of the Statutes. ..... 8

    II.    Public Access to Information Through FOIA is Critical to the Protection of Marine Mammals of Special Importance to Tribal Amici. .......................................................... 10

CONCLUSION ............................................................................................................................ 14

OCEANA v. NMFS, Case No. 3:24-CV-00279-SLG

Tribal Amici Brief - i

*Crag Law Center*
*3141 E. Burnside St.*
*Portland, OR 97214*
*(503) 525-2728*

Case 3:24-cv-00279-SLG    Document 29-2    Filed 07/14/25    Page 2 of 20

# TABLE OF AUTHORITIES

**Cases**

*Dep't of the Air Force v. Rose*,
  425 U.S. 352 (1976)........................................................................................ 3

*EPA v. Mink*,
  410 U.S. 73 (1973).......................................................................................... 3

*FBI v. Abramson*,
  456 U.S. 615 (1982)........................................................................................ 3

*McCutchen v. U.S. Dep't of Health & Human Servs.*,
  30 F.3d 183 (D.C. Cir. 1994).......................................................................... 3

*U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*,
  489 U.S. 749 (1989)........................................................................................ 3

*United States v. Millis*,
  621 F.3d 914 (9th Cir. 2010) .......................................................................... 7

**Statutes**

5 U.S.C. § 552 ............................................................................................ 3, 4, 8
16 U.S.C. § 1361 ............................................................................................... 4
16 U.S.C. § 1362 ............................................................................................ 4, 5
16 U.S.C. § 1371 ............................................................................................ 4, 5
16 U.S.C. § 1387 ........................................................................................... 5, 11
16 U.S.C. § 1388 ................................................................................................ 5
16 U.S.C. § 1801 ........................................................................................... 6, 11
16 U.S.C. § 1822 ................................................................................................ 6
16 U.S.C. § 1826 ................................................................................................ 6
16 U.S.C. § 1829 ................................................................................................ 6
16 U.S.C. § 1851 ................................................................................................ 6
16 U.S.C. § 1881 ............................................................................................. 6, 7

**Regulations**

50 C.F.R Parts 223 and 224 ............................................................................ 12

OCEANA v. NMFS, Case No. 3:24-CV-00279-SLG

Tribal Amici Brief - ii

*Crag Law Center*
*3141 E. Burnside St.*
*Portland, OR 97214*
*(503) 525-2728*

Case 3:24-cv-00279-SLG   Document 29-2   Filed 07/14/25   Page 3 of 20

50 C.F.R. Part 229...................................................................................................................... 4

50 C.F.R. § 600.10 ................................................................................................................ 7, 8

**Other Authorities**

Forensic Review Workshop Report: Reviewing the Gear Involved in West Coast Whale Entanglements (2018) ....................................................................................... 12, 13

Lee Benaka et al., U.S. Dep't of Commerce, NOAA, U.S. National Bycatch Report First Edition Update 3, NOAA Tech. Memo. NMFS-F/SPO-190 (2019)............................................ 6

Lauren Saez et al., U.S. Dep't of Commerce, NOAA, Large Whale Entanglements off the U.S. West Coast, from 1982–2017, NOAA Tech. Memo. NMFS-OPR-63A (2021) .. 12, 13

Senate Report No. 813 (1st Sess. 1965)....................................................................................... 3

OCEANA v. NMFS, Case No. 3:24-CV-00279-SLG

Tribal Amici Brief - iii

*Crag Law Center*
*3141 E. Burnside St.*
*Portland, OR 97214*
*(503) 525-2728*

Case 3:24-cv-00279-SLG    Document 29-2    Filed 07/14/25    Page 4 of 20

# INTRODUCTION

The Organized Village of Kake, the Hoonah Indian Association, and the Organized Village of Kasaan ("Tribal Amici") file this brief because (1) they have a deep and longstanding connection to the marine ecosystems of the North Pacific Ocean and a unique cultural and legal interest in the protection of marine mammals, including orcas and other species of spiritual, subsistence, and ecological significance; and (2) public access to the photos and records requested by Plaintiff Oceana in this case supports Tribal Amici's interest in protecting these marine resources. This case implicates fundamental questions about the scope of federal transparency and the government's stewardship responsibilities toward protected marine species; Tribal Amici support Oceana's efforts to obtain visual documentation and other information regarding marine mammal bycatch withheld or redacted by the National Marine Fisheries Service ("NMFS") under Freedom of Information Act ("FOIA") exemptions.

FOIA was enacted to ensure open access to government information and foster accountability; its limited exemptions must be narrowly construed and justified by the agency seeking to withhold records. Although FOIA allows agencies to protect certain categories of information, it does not permit blanket redaction of images showing harm to marine mammals—especially where the redactions obscure details that are not personally identifying or commercially sensitive. Tribal Amici recognize that there are valid reasons for the exemptions created in FOIA, and there may be strong arguments for protecting confidential information from public disclosure in certain situations. However, those reasons must fit within the exemptions articulated in the statute, and must be justified by the agency seeking to withhold or redact responsive records. Further, while Tribes, as sovereigns, have a special relationship with the federal government and may request and receive information outside of FOIA, FOIA's promise
OCEANA v. NMFS, Case No. 3:24-CV-00279-SLG

Tribal Amici Brief - 1

*Crag Law Center*
*3141 E. Burnside St.*
*Portland, OR 97214*
*(503) 525-2728*

Case 3:24-cv-00279-SLG   Document 29-2   Filed 07/14/25   Page 5 of 20

of access to information remains an important tool for both Tribes and their partners to carry out their interests in the protection of natural resources consistent with federal laws, like the Marine Mammal Protection Act ("MMPA").

The public's right to access information about harm to marine mammals is not only consistent with FOIA and the confidentiality provisions of the Magnuson-Stevens Fishery Conservation and Management Act ("MSA"), as explained below, but also vital to fulfilling the objectives of the MMPA. The MMPA was enacted specifically to prevent the depletion and extinction of marine mammal populations, and it anticipates meaningful public, and Tribal, participation in that mission. It also provides for co-management and consultation with Tribal entities, and empowers Tribes to take part in shaping the policies that govern marine mammal protection and fisheries regulation.

The withheld and redacted photographs and other information in this case are critical tools in identifying entanglement patterns, diagnosing systemic risks, informing regulatory change, and achieving the conservation goals of the MMPA. As documented extensively in NMFS' own reports, forensic analysis of entanglement images has led directly to gear modifications, improved fishery practices, and reductions in whale mortality. Denying access to these images and other information undermines both the science of conservation and Tribal Amici's sovereign right to participate meaningfully in the stewardship of marine species with whom they share profound cultural and ecological relationships.

## FACTUAL BACKGROUND

Tribal Amici adopt and incorporate by reference Oceana's factual background at pages 7–15 of the Cross-Motion for Summary Judgment and Opposition to Defendants' Motion for Summary Judgment ("Oceana Br."), ECF No. 26.

OCEANA v. NMFS, Case No. 3:24-CV-00279-SLG

Tribal Amici Brief - 2

*Crag Law Center*
*3141 E. Burnside St.*
*Portland, OR 97214*
*(503) 525-2728*

Case 3:24-cv-00279-SLG    Document 29-2    Filed 07/14/25    Page 6 of 20

# LEGAL BACKGROUND

This case involves the intersection of three federal statutes. Tribal Amici summarize these statutes and expand upon Oceana's presentation. *See* Oceana Br. at 2–7.

## I. The Freedom of Information Act Favors Disclosure of Information, and Exemptions Must be Construed Narrowly.

The "basic purpose" of FOIA, 5 U.S.C. § 552, is "to open agency action to the light of public scrutiny." *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 772 (1989) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 272 (1976)). Congress had two goals in creating FOIA: first, "to permit access to official information long shielded unnecessarily from public view," and second, "to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *EPA v. Mink*, 410 U.S. 73, 80 (1973), *superseded by statute on other grounds.* The purpose of FOIA is "disclosure, not secrecy." *Rose*, 425 U.S. at 361.

To achieve its goals of government transparency and accountability, FOIA "establish[es] a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." S. Rep. No. 813, at 3 (1st Sess. 1965). Thus, FOIA requires federal agencies to release requested records to the public unless a specific statutory exemption applies. 5 U.S.C. § 552(b)(1)–(9). These exemptions protect interests such as personal privacy and national security, *see id.*, but must be narrowly construed in light of FOIA's primary objective of disclosure. *FBI v. Abramson*, 456 U.S. 615, 630 (1982). The agency has the burden to prove that it may withhold responsive records. 5 U.S.C. § 552(a)(4)(B); *see also McCutchen v. U.S. Dep't of Health & Human Servs.*, 30 F.3d 183, 185 (D.C. Cir. 1994). Withholding a record is permissible "only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption * * * or disclosure is prohibited by law." 5 U.S.C.

OCEANA v. NMFS, Case No. 3:24-CV-00279-SLG

Tribal Amici Brief - 3

*Crag Law Center*
*3141 E. Burnside St.*
*Portland, OR 97214*
*(503) 525-2728*

Case 3:24-cv-00279-SLG    Document 29-2    Filed 07/14/25    Page 7 of 20

§ 552(a)(8)(A)(1)(I), (II).[1]

Here, the majority of disputed records were redacted or withheld under Exemption 3, which allows agencies to exempt records that are "specifically exempted from disclosure by" another statute, if that statute "requires that the matters be withheld in such a manner as to leave no discretion on the issue," or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3).

## II. Information about Vessel Interactions with Marine Mammals is Necessary to Carry Out the Purposes of the Marine Mammal Protection Act.

The primary objective of the MMPA is to conserve marine mammals and prevent their populations from declining. *See* 16 U.S.C. § 1361. Congress enacted the MMPA specifically out of concern that human activities were threatening marine mammals with extinction or significant depletion. *Id.* § 1361(1). The MMPA emphasizes the considerable cultural, recreational, and economic importance of marine mammals, and establishes a statutory framework under which their populations can be conserved, managed, researched, and allowed to flourish. *Id.* § 1361(1)–(6). The MMPA was designed to protect and foster the international recovery and development of marine mammal populations to their greatest potential extent. *Id.* § 1361(6). To achieve this, the MMPA prohibits the "taking" of any marine mammal species, with limited exceptions. *Id.* § 1371(a).[2]

---

[1] Tribal Amici also recognize that FOIA's structure may inhibit the sharing of sensitive information with federal agencies, when those agencies cannot guarantee the confidentiality of that information.

[2] "Take" means "to harass, hunt, capture, collect, or kill, or attempt to harass, hunt, capture, collect or kill, any marine mammal." 16 U.S.C. § 1362(13). The Marine Mammal Authorization Program issues certificates for fisheries authorizing the incidental, but not intentional, taking of non-endangered/threatened marine mammals while engaged in commercial fishing operations. These authorizations require the reporting of all incidental mortality or injury of marine mammals to NMFS within 48 hours of the end of each trip, and require allowing observers access to monitor fishing operations. *See* 50 C.F.R. Part 229.

OCEANA v. NMFS, Case No. 3:24-CV-00279-SLG

Tribal Amici Brief - 4

Crag Law Center
3141 E. Burnside St.
Portland, OR 97214
(503) 525-2728

Case 3:24-cv-00279-SLG    Document 29-2    Filed 07/14/25    Page 8 of 20

The MMPA plays a critical role in the survival of marine mammals, at its core reflecting a strong national commitment to the stewardship of marine ecosystems and the species that inhabit them. All orcas are protected under the MMPA, as are other marine mammals of interest and special relationship to Tribal Amici. *See id.* § 1362(1), (6).

Importantly, the MMPA operates within a broader legal and cultural framework that recognizes the sovereign rights of Tribes and their enduring relationship to marine life. In particular, several provisions of the MMPA recognize the special relationship of Alaska Native Tribes with marine mammals. For example, Section 119 provides for the co-management of marine mammals between NMFS and Alaska Native Organizations including, but not limited to, Alaska Native Tribes and tribally authorized co-management bodies. *Id.* § 1388. Section 101(b) provides exceptions for subsistence uses by Alaska Natives, recognizing the customary and traditional uses of marine mammals for direct personal or family food, shelter, clothing, tools, and transportation. *Id.* § 1371(b).

Alaska Native organizations are among the representatives to be included on Take Reduction Teams ("TRTs"). *Id.* § 1387(f)(6)(C). TRTs are groups established by NMFS to develop and implement plans aimed at reducing incidental mortality and serious injury of marine mammals in the course of commercial fishing operations. *Id.* § 1387(f)(6). These teams hold public meetings, where they work to develop strategies to reduce incidental take. *Id.* § 1387(f)(6)(D). To do so effectively, TRTs require specific details of interactions with marine mammals. *Id.* § 1387(f)(6). Though the statute does not explicitly recognize the spiritual relationship with orcas (which are not traditionally hunted by Tribal Amici), these provisions do reflect the special position and interests of Alaska Native tribes with marine mammals.

///

OCEANA v. NMFS, Case No. 3:24-CV-00279-SLG

Tribal Amici Brief - 5

*Crag Law Center*
*3141 E. Burnside St.*
*Portland, OR 97214*
(503) 525-2728

Case 3:24-cv-00279-SLG   Document 29-2   Filed 07/14/25   Page 9 of 20

### III. Confidentiality Provisions Under the Magnuson-Stevens Fishery Conservation and Management Act are Narrow.

In adopting the MSA, Congress recognized the need for a national program for the management of fisheries resources to prevent overfishing, ensure conservation, and protect essential fish habitats. 16 U.S.C. § 1801(a)(6), (b). In 1996, the Sustainable Fisheries Act added new national standards to address bycatch. *Id.* § 1851(a)(9). Further, the MSA Reauthorization Act of 2007 enhanced international cooperation to address illegal, unregulated, and unreported fishing and bycatch. *Id.* §§ 1822(h), 1826i–j, 1829. Bycatch of protected species like marine mammals is a significant threat to recovering sensitive and dwindling populations.[3]

A core purpose of the MSA is enabling "consumer and environmental organizations, and other interested persons to participate in, and advise on," fisheries conservation and management processes. *Id.* § 1801(b)(5). Fisheries information is "essential" to effective conservation, management, and scientific understanding. *Id.* § 1801(a)(8). While the MSA includes confidentiality provisions, those provisions are designed to protect the proprietary commercial information provided to federal regulators by fishing vessels and operators—not to shield commercial fisheries from oversight.

The MSA's confidentiality provisions ensure that businesses will continue to voluntarily provide sensitive operational data to inform sustainable fisheries management without fear of competitive harm. *See id.* § 1881a(b). Specifically, the statute safeguards information that could directly or indirectly reveal the identity or business practices of fishers, recognizing the legitimate interest in protecting vessels and their crews from commercial disadvantage or undue

---

[3] *See, e.g.*, LEE BENAKA ET AL., U.S. DEP'T OF COMMERCE, NOAA, U.S. NATIONAL BYCATCH REPORT FIRST EDITION UPDATE 3, NOAA TECH. MEMO. NMFS-F/SPO-190 at v (2019), available at https://media.fisheries.noaa.gov/dam-migration/nbr_update_3.pdf (last visited July 10, 2025).

OCEANA v. NMFS, Case No. 3:24-CV-00279-SLG

Tribal Amici Brief - 6

Crag Law Center
3141 E. Burnside St.
Portland, OR 97214
(503) 329-2728

Case 3:24-cv-00279-SLG     Document 29-2     Filed 07/14/25     Page 10 of 20

scrutiny. *See id.* Again, this narrowly-tailored confidentiality is intended to shield fishing vessels' proprietary economic and operational strategies, as well as prevent unwanted exposure of personal identities—not to obscure the environmental impacts of fishing practices or impede transparency regarding harm to protected marine mammal populations of profound cultural and subsistence significance to Tribes.

The limits of confidentiality are clear, particularly when fisheries operations are causing injury or mortality to marine mammals and protected species like orcas. MSA implementing regulations promulgated by NMFS explicitly exclude from the definition of "confidential information" observer information related to interactions with species protected under the MMPA. 50 C.F.R. § 600.10 (Jan. 16, 2025). This observer information can be publicly disclosed, provided that information relating to fishing practices and gear would not constitute a trade secret under FOIA Exemption 4. *Id.* This definition thus recognizes that detailed information is necessary for the MMPA to work effectively, without raising concerns that such disclosure violates the MSA confidentiality interests.

## ARGUMENT

Defendants would have this Court read the MSA's confidentiality provisions in a vacuum and apply them in a manner inconsistent with FOIA, the MMPA, and the MSA itself. On the other hand, by reading the three statutes broadly and harmoniously, it is clear that NMFS must release unredacted photos showing marine mammal bycatch, as well as related information. *Cf. United States v. Millis*, 621 F.3d 914, 917 (9th Cir. 2010) (a "fundamental cannon of construction is that words must be read in their context, with a view to their place in the overall regulatory scheme, and to fit, if possible, all parts into a harmonious whole"). Disclosure of information related to mortality and injury of marine mammals protected under the MMPA—

OCEANA v. NMFS, Case No. 3:24-CV-00279-SLG

Tribal Amici Brief - 7

Crag Law Center
3141 E. Burnside St.
Portland, OR 97214
(503) 329-2728

Case 3:24-cv-00279-SLG    Document 29-2    Filed 07/14/25    Page 11 of 20

particularly orcas—is important to Tribal Amici's goals of protecting this sacred animal.

I.     **Defendants' Position Elevates Narrow Exceptions Over the Purposes of the Statutes.**

Assuming for the sake of argument that the MSA is applicable, NMFS has misconstrued the purpose and scope of the MSA's confidentiality provisions by extensively redacting images of marine mammal bycatch.[4] While the MSA does protect certain confidential information, it does not apply to information regarding take of marine mammals.

Conspicuously absent from Defendants' briefing is any citation to NMFS' definition of "confidential information" that would be subject to the MSA's confidentiality protections. At 50 C.F.R. § 600.10 (Jan. 16, 2025), NMFS explicitly states that "'confidential information' does not include observer information related to interactions with species protected under the [MMPA]: the date, time, and location of interactions, the type of species, and the fishing practices and gear involved provided that information regarding fishing practices and gear would not constitute a trade secret under the Freedom of Information Act, 5 U.S.C. § 552(b)(4)."[5] Consequently, records involving observer information concerning interactions with marine mammals is not "confidential information" subject to the MSA's confidentiality provisions, such that FOIA Exemption 3 could apply. *Contra* Serv. Br. at 18–19. Instead, for such records involving

---

[4] Tribal Amici agree with Oceana that the MMPA is the relevant statute for purposes of FOIA Exemption 3 here, not the MSA. *See* Oceana Br. at 19–20. To the extent the MSA applies, Tribal Amici provide this further argument on how that statute's confidentiality provisions should be read harmoniously with FOIA and the MMPA.

[5] *See also* Email from Ned Cyr, Dir., Off. of Sci. & Tech., to Serv. Science Directors et al., Re: Data Aggregation and Summarization Guidelines (July 2, 2009) (Roy Decl., Ex. 1, ECF No. 26-2) (agency guidance directing staff to apply presumption that "the release of the following information associated with incidental takes of marine mammals . . . will not disclose the identity or business of any person: the name and description of the fishery; the species of each marine mammal . . . incidentally killed or injured; the date, time, and geographic location of the take; and non-proprietary information regarding gear used in the take," if there are at least three participants in the fishery).
OCEANA v. NMFS, Case No. 3:24-CV-00279-SLG

Tribal Amici Brief - 8

*Crag Law Center*
*3141 E. Burnside St.*
*Portland, OR 97214*
*(503) 529-2728*

Case 3:24-cv-00279-SLG     Document 29-2     Filed 07/14/25     Page 12 of 20

observer information regarding interactions with marine mammals, only FOIA Exemption 4 may apply, and here, NMFS has made no argument regarding Exemption 4.[6] In sum, NMFS itself has already read the statutes harmoniously; Defendants' current position is contrary to the statutes and the agency's own interpretation of them.

As a general matter, Oceana, and Tribal Amici, do not seek access to identifying information such as vessel names, crew faces, or personal identifiers that could realistically reveal the identities of observers, employees, or businesses. Rather, they seek visual documentation showing how marine mammals—culturally and subsistence-important species—are harmed by fishing practices. NMFS's extensive use of pixelation to remove contextual details, such as gear configuration and general operational settings, goes well beyond any reasonable application of the MSA's confidentiality provisions. Such details cannot plausibly reveal proprietary economic secrets or meaningfully identify specific vessels or individuals, especially given the hundreds of vessels that operate within the North Pacific fisheries annually. The shift to extensive pixelation redactions in this case is both unnecessary and overly broad.

Ultimately, the confidentiality protections of the MSA were never intended to shield fisheries from accountability for their impacts on protected marine mammals. NMFS's interpretation here impedes Tribes from accessing information vital to their cultural survival, ecological knowledge, and sovereign stewardship responsibilities. NMFS's expansive redactions and withholdings misconstrue the narrow statutory protections intended solely to safeguard personal identities and commercially sensitive information, unnecessarily blocking Tribal

---

[6] It goes without saying, Tribes are not commercial competitors seeking access to proprietary information for market advantage. Rather, they are sovereign entities with a unique legal status and a recognized stake in the sustainable management of fisheries and the protection of marine mammals as mandated under the MMPA.

OCEANA v. NMFS, Case No. 3:24-CV-00279-SLG

Tribal Amici Brief - 9

Crag Law Center
3141 E. Burnside St.
Portland, OR 97214
(503) 525-2728

Case 3:24-cv-00279-SLG    Document 29-2    Filed 07/14/25    Page 13 of 20

Amici's meaningful participation in marine mammal conservation.

## II. Public Access to Information Through FOIA is Critical to the Protection of Marine Mammals of Special Importance to Tribal Amici.

Read together, the MMPA, FOIA, and the MSA ensure transparency, informed stewardship, and public oversight of actions that impact marine mammals. Not only is transparency a statutory requirement, it is a moral and political obligation in the government's trust relationship with Tribes. The repeated, lethal bycatch of marine mammals—particularly orcas—has triggered alarm among Tribal members, especially given orcas' revered status in several Indigenous doctrines. When agencies like NMFS heavily redact or obscure key details about bycatch, they impede the ability of Tribes to fulfill their own roles as stewards and co-managers of these species, and hinder the ability of Tribes to protect their cultural heritage.

Marine mammals such as orcas, seals, sea lions, and whales are not interchangeable wildlife to Tribes—they are important figures in cultural, dietary, and ceremonial life. Modern data, particularly visual evidence that reflects gear interactions, condition of the animal, and situational context, serves as an extension of traditional stewardship relationships. Access to information about these animals allows Tribes to assess threats, demand regulatory accountability, and advocate for fisheries policies that protect species of cultural importance. This role is not ancillary to the MMPA and MSA, it is anticipated and endorsed by them.

Congress has been explicit about the public's role in fisheries management. The MSA emphasizes public engagement, openness, and transparency, stating among its purposes to enable "consumer and environmental organizations, and other interested persons to participate in, and advise on" fisheries management, and to assure that the national fishery conservation and management program involves, and is responsive to the needs of, interested and affected citizens. 16 U.S.C. § 1801(b)(5), (c)(3). The MMPA specifically calls for public reporting of marine

OCEANA v. NMFS, Case No. 3:24-CV-00279-SLG

Tribal Amici Brief - 10

*Crag Law Center*
*3141 E. Burnside St.*
*Portland, OR 97214*
*(503) 329-2728*

Case 3:24-cv-00279-SLG   Document 29-2   Filed 07/14/25   Page 14 of 20

mammal injury and mortality data, including the date, time, and approximate location of the take. *Id.* § 1387(e). This information is critical to the effectiveness of the MMPA's regulation of incidental take of marine mammals in the course of commercial fishing operations and the stated goal that "incidental mortality or serious injury of marine mammals occurring in the course of commercial fishing operations be reduced to insignificant levels approaching a zero mortality and serious injury rate within 7 years after April 30, 1994." *Id.* § 1387(a)(1). However, 31 years after 1994, incidental mortality of marine mammals, particularly orcas, continues at alarming rates.

Visual documentation of incidental takes, especially photographs of entangled whales, have been essential to efforts to reduce future entanglements and protect vulnerable marine mammal populations. These images serve not only to confirm the occurrence and severity of an entanglement but also to illuminate the circumstances under which it occurred. By analyzing visual records, scientists and managers can identify the specific gear types, configurations, and entanglement mechanisms most commonly associated with harm to whales.

As detailed in NOAA's Large Whale Entanglements off the U.S. West Coast (1982–2017) report, photographic and video documentation enables experts to determine the species involved, the type of gear responsible, and the precise points of entanglement on the animal's body.[7] This information feeds into databases that track trends across fisheries, seasons, and geographies, and it informs management decisions such as time-area closures, gear

---

[7] LAUREN SAEZ ET AL., U.S. DEP'T OF COMMERCE, NOAA, LARGE WHALE ENTANGLEMENTS OFF THE U.S. WEST COAST, FROM 1982–2017, NOAA TECH. MEMO. NMFS-OPR-63A at vii–xii (2021), available at https://www.fisheries.noaa.gov/s3/2021-03/tm-opr-63a-final-031921.pdf?VersionId=null (last visited July 10, 2025).

OCEANA v. NMFS, Case No. 3:24-CV-00279-SLG

Tribal Amici Brief - 11

Crag Law Center
3141 E. Burnside St.
Portland, OR 97214
(503) 529-2728

Case 3:24-cv-00279-SLG   Document 29-2   Filed 07/14/25   Page 15 of 20

modifications, and fishery regulations.[8] NMFS explains that documentation collected during entanglement response was "invaluable in gaining an understanding of entanglements toward preventative solutions,"[9] and further notes that periodic reviews of entanglement data is crucial to evaluating future conservation recommendations, modifying management and response methods, and developing safer fishing practices.[10]

Forensic analysis of entanglement data, including images, is necessary for understanding the physical dynamics of entanglement, including the characteristics of the gear and fishery involved, the actions taken during response, the injuries sustained, and the behavior of whales.[11] Such analysis has led to practical recommendations to modify gear connections to minimize snagging risk.[12] As a result of documentation collected from entangled whales, managers have developed gear modifications and instituted line marking to help identify gear when buoys and traps have come off.[13] These insights would not be possible without the availability of detailed, case-specific visual documentation.

---

[8] *Id.* at 2, 37, 47; *cf.* 50 C.F.R Parts 223 and 224 (ECF No. 26-30) (interim final rule prohibiting fishing with drift gillnets in the California/Oregon drift gillnet fishery from August 15 through November 15).

[9] SAEZ ET AL.*, supra* note 7 at viii.

[10] *Id.* at 40–41.

[11] *See generally* FORENSIC REVIEW WORKSHOP REPORT: REVIEWING THE GEAR INVOLVED IN WEST COAST WHALE ENTANGLEMENTS (2018) (ECF No. 26-28). For example, "Pacific States Marine Fisheries Commission (PSMFC) and [NMFS] convened a two-day workshop in Long Beach, California, to review and discuss forensic analysis of available data and documentation related to recent whale entanglements on the U.S. west coast with thirty-one invited experts from a diversity of backgrounds. These experts included members of the U.S. west coast fishing industry as well as entanglement responders, scientists and managers knowledgeable about fishing gear and/or whale entanglements." *Id.* at 3. Participants were provided with a combination of photos and written documentation of multiple entanglement cases to review. *Id.* at 14.

[12] *See id.* at 4, 14, 20.

[13] *Id.* at 8.

OCEANA v. NMFS, Case No. 3:24-CV-00279-SLG

Tribal Amici Brief - 12

*Crag Law Center*
*3141 E. Burnside St.*
*Portland, OR 97214*
*(503) 529-2728*

Case 3:24-cv-00279-SLG    Document 29-2    Filed 07/14/25    Page 16 of 20

Images can be essential for identifying the species,[14] fishery, and specific type of gear involved in entanglements,[15] determining the likelihood of repeat events, and evaluating compliance with regulatory measures.[16] Photographic evidence is probative, diagnostic, and indispensable to any science-based strategy for reducing incidental takes.[17] Broad access to such materials is essential not only for governmental management agencies but also for Tribal governments, scientific researchers, and conservation organizations. Ensuring timely access to this evidence—particularly in cases involving marine mammals of cultural and ecological significance to Tribes—is crucial to advancing collaborative, transparent, and effective

---

[14] *Id.* at 13–14 (highlighting "the importance and need for improved documentation of entangled whales when sighted, including specific focus on taking pictures of flukes for identification, and suggested that responders (and other likely reporting parties) be provided information and trained in more standardized protocols for complete documentation of entanglement cases").

[15] *See generally* SAEZ ET AL., *supra* note 7 (researchers relied on photos and videos collected during entanglement events to identify species, gear, and fisheries involved). The NOAA Technical Memorandum also explains that positively identifying the origins of entangled gear on the U.S. West Coast has often been limited by "incompleteness of descriptions or documentation (photos or video) provided by reporting parties," the inability of reporting parties to identify various types of commercial fishing gear due to the general public's lack of familiarity with most types of gear, the "lack of accessible and comprehensive information regarding the types of gear used by specific commercial and recreational fisheries," and the "lack of markings or other characteristics on fishing gear that would facilitate unambiguous associations with specific fishery types." *Id.* at 3. Lack of transparency and dissemination of information related to bycatch and entanglement events only exacerbates this issue.

[16] *See id.* at 37–40 (explaining that use of seasonal patterns of whale presence along with data from entanglement reports (e.g., photos and videos) regarding the origins of entanglements aids in decision-making addressing conservation concerns; and stating that review of entanglement data is necessary to assess changes in entanglement trends and fishing patterns, especially following fishery management changes).

[17] *See* FORENSIC REVIEW WORKSHOP REPORT, ECF 26-28 at 20, 15 (workshop participants expressed support for increased dissemination and collection of photos from entangled whales, improvement in standardization of data collected during entanglement responses, and better education and training on data collection); SAEZ ET AL., *supra* note 7 at vii-ix, 32, 40 (noting that documentation collected during entanglement response, especially photos and videos, was "invaluable in gaining an understanding of entanglements toward preventative solutions," and discussing the need for better documentation and quality of information collected during these events (e.g., photo identification, gear identification, injuries)).

OCEANA v. NMFS, Case No. 3:24-CV-00279-SLG

Tribal Amici Brief - 13

*Crag Law Center*
*3141 E. Burnside St.*
*Portland, OR 97214*
*(503) 329-2728*

Case 3:24-cv-00279-SLG     Document 29-2     Filed 07/14/25     Page 17 of 20

conservation outcomes.

At bottom, unredacted images showing lethal bycatch are an important tool for initiating meaningful changes to fishing practices to further the purposes of the MMPA. When that information is collected by observers, but then obscured or withheld under speculative confidentiality claims, Tribes are denied a voice in government processes that directly affect the health of marine mammal populations upon which they rely. Written summaries and aggregate data cannot replicate the impact or specificity of photographic records. For Tribal Amici, visual documentation is critical for communicating harm to decision-makers, leaders, and community members. It allows for informed advocacy before federal councils, commissions, and public hearings where Tribes often demand greater protection for culturally significant species. Without access to unredacted images, Tribes are denied the ability to assess the full impact of industrial fishing practices on the marine species with whom they share special relationships.

Redacted photos strip away crucial context—such as fishing gear configuration, the spatial relationship between the animal and the vessel, and the condition of the animal upon retrieval. This context is essential for Tribes to meaningfully participate in co-management, advocate for protective regulations, and hold agencies accountable to MMPA standards. By withholding or redacting visual evidence essential for understanding how fisheries affect marine mammals, NMFS restricts Tribes' ability to fulfill their role as stewards and active participants in fisheries governance and marine mammal protection.

///

///

///

///

OCEANA v. NMFS, Case No. 3:24-CV-00279-SLG

Tribal Amici Brief - 14

*Crag Law Center*
*3141 E. Burnside St.*
*Portland, OR 97214*
*(503) 529-2728*

Case 3:24-cv-00279-SLG    Document 29-2    Filed 07/14/25    Page 18 of 20

# CONCLUSION

For all of the foregoing reasons, Tribal Amici respectfully request that this Court grant summary judgment in favor of Oceana.

Respectfully submitted this 14th day of July 2025.

/s/ Oliver J. H. Stiefel

Oliver J. H. Stiefel, OSB #135136
(503) 227-2212 | oliver@crag.org
Alexandria Dolezal, OSB #223924
(503) 224-0788 | alexandria@crag.org
CRAG LAW CENTER
3141 E. Burnside St.
Portland, Oregon 97214

*Applicants Pro Hac Vice*

*Attorneys for Amici Curiae*

OCEANA v. NMFS, Case No. 3:24-CV-00279-SLG

Tribal Amici Brief - 15

*Crag Law Center*
*3141 E. Burnside St.*
*Portland, OR 97214*
*(503) 529-2728*

Case 3:24-cv-00279-SLG     Document 29-2     Filed 07/14/25     Page 19 of 20

# CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of July 2025, a true and accurate copy of AMICI BRIEF was filed electronically via the CM/ECF system by the United States District Court, District of Alaska.

DATED this 14th day of July, 2025

/s/ Oliver J. H. Stiefel

Oliver J. H. Stiefel

*Of Counsel for Tribal Amici*

OCEANA v. NMFS, Case No. 3:24-CV-00279-SLG

Tribal Amici Brief

*Crag Law Center*
*3141 E. Burnside St.*
*Portland, OR 97214*
*(503) 329-2728*

Case 3:24-cv-00279-SLG   Document 29-2   Filed 07/14/25   Page 20 of 20