Rumela Roy (*pro hac vice*)
EARTHJUSTICE
1125 17th Street, Suite 1010
Denver, CO 80202
303-996-9623 Telephone
rroy@earthjustice.org

Andrea A. Treece (*pro hac vice*)
EARTHJUSTICE
180 Steuart St. #194330
San Francisco, CA 94105
415-217-2000 Telephone
atreece@earthjustice.org

*Counsel for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| OCEANA, INC., | Case No. 3:24-cv-00279-KFR |
| *Plaintiff*, | |
| v. | |
| NATIONAL MARINE FISHERIES SERVICE, | |
| *Defendants*. | |

## REPLY IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ............................................................................1

ARGUMENT ...................................................................................1

I.     NMFS Has Not Provided a *Vaughn* Index or Sufficient Declarations. ..........................................................................1

II.    NMFS Has Not Shown That Exemption 3 Applies to the Redacted Records. ...................................................................3

     A.    The MMPA Governs the Marine Mammal Bycatch Records at Issue. ...................................................3

     B.    The MMPA Requires Release of the Redacted Information. ....................................................................10

     C.    The MMPA and MSA Require Release of the Redacted Information Because Release Would Not Disclose Identities or Businesses. ............................................13

           1.    Pixelated redactions in photos ......................13

           2.    Photo metadata of fishery name, date, and location .......16

           3.    Redacted information in the incident spreadsheets ........17

     D.    NMFS Fails to Justify Its Inconsistent Invocation of Exemption 3. ................................................................17

III.    NMFS Did Not Reasonably Segregate All Non-Exempt Information. ..................................................................18

CONCLUSION ..............................................................................20

Reply in Supp. of Pl.'s Cross-Mot. for Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-KFR

Case 3:24-cv-00279-KFR    Document 43    Filed 09/22/25    Page 2 of 25

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Am. C.L. Union Found. of Arizona v. U.S. Dep't of Homeland Sec.*,
    No. 14-02052, 2017 WL 8895339 (D. Ariz. Jan. 26, 2017) .................................. 2

*Anderson v. CIA*,
    63 F. Supp. 2d 28 (D.D.C. 1999) .............................................................. 19

*Block & Leviton LLP v. Fed. Trade Comm'n*,
    No. 19-12539, 2020 WL 6082657 (D. Mass. Oct. 15, 2020) .............................. 3

*Carlson v. U.S. Postal Serv.*,
    504 F.3d 1123 (9th Cir. 2007) ......................................................... 3, 10

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120 (2000) ............................................................................ 10

*Forest Guardians v. U.S. Dep't of Interior*,
    No. 02-1003, 2004 WL 3426434 (D.N.M. Feb. 28, 2004) ............................... 15

*John Doe Agency v. John Doe Corp.*,
    493 U.S. 146 (1989) ............................................................................ 10

*Rosenfeld v. U.S. Dep't of Just.*,
    57 F.3d 803 (9th Cir. 1995) ................................................................... 2

*Solar Sources, Inc. v. United States*,
    142 F.3d 1033 (7th Cir. 1998) ................................................................ 19

*United States v. Cabaccang*,
    332 F.3d 622 (9th Cir. 2003) ................................................................. 11

*Wiener v. F.B.I.*,
    943 F.2d 972 (9th Cir. 1991) .................................................................. 2

*Willamette Indus., Inc. v. United States*,
    689 F.2d 865 (9th Cir. 1982) ..................................................... 2, 13, 19, 20

**Statutes**

5 U.S.C. § 552 ........................................................................... 3, 18

Reply in Supp. of Pl.'s Cross-Mot. for Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-KFR

Case 3:24-cv-00279-KFR     Document 43     Filed 09/22/25     Page 3 of 25

16 U.S.C. § 1371 ................................................................................4

16 U.S.C. § 1386 ................................................................................4

16 U.S.C. § 1387 ...........................................................................*passim*

16 U.S.C. § 1802 .............................................................................8, 9

16 U.S.C. § 1854 ................................................................................9

16 U.S.C. § 1881a ............................................................................10

## Regulations

50 C.F.R. § 600.10 .............................................................................9

50 C.F.R. § 679.51 .............................................................................7

## Federal Register

77 Fed. Reg. 30486 (May 23, 2012) ....................................................9

89 Fed. Reg. 12257 (Feb. 16, 2024) ....................................................6

89 Fed. Reg. 17358 (Mar. 11, 2024) ...................................................9

89 Fed. Reg. 102001 (Dec. 17, 2024) ..................................................9

## Other Authorities

Black's Law Dictionary (12th ed. 2024) .............................................11

Online Etymology Dictionary,
    https://www.etymonline.com/word/proprietary.........................................11

Reply in Supp. of Pl.'s Cross-Mot. for Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-KFR

Case 3:24-cv-00279-KFR    Document 43    Filed 09/22/25    Page 4 of 25

# INTRODUCTION

The observer information at issue in this Freedom of Information Act (FOIA) case is essential for understanding where, when, and how marine mammals are caught by North Pacific groundfish fisheries, and would allow Plaintiff Oceana, Inc. (Oceana) to formulate and advocate for effective marine mammal take reduction measures. FOIA requires the release of this information because neither the Marine Mammal Protection Act (MMPA) nor the Magnuson-Stevens Fishery Conservation and Management Act (MSA) specifically prohibits its release. Rather, disclosure is necessary to comply with the MMPA's mandates to reduce fisheries' take of marine mammals and involve the public in marine mammal protection. The arguments Defendant National Marine Fisheries Service (NMFS) advances to defend its indiscriminate withholdings lack legal support, contradict the agency's own longstanding interpretations and practice, and rely on unsubstantiated speculation as to how observer information might generally be used to identify businesses or individuals while failing to show that any of the specific withheld information would pose such a risk. NMFS has failed to carry its burden to justify its withholdings under FOIA. Therefore, the Court should order NMFS to release the requested information.

# ARGUMENT

## I.    NMFS Has Not Provided a *Vaughn* Index or Sufficient Declarations.

NMFS has not provided the requisite justification to demonstrate that the redacted records are exempt. First, NMFS failed to submit a *Vaughn* index. Oceana Br. 16–17, ECF No. 26. A *Vaughn* index is particularly necessary here because NMFS extensively

Reply in Supp. of Pl.'s Cross-Mot. for Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-KFR

Case 3:24-cv-00279-KFR    Document 43    Filed 09/22/25    Page 5 of 25

redacted hundreds of records based on the general assertion that the information could theoretically allow a viewer to identify individuals or businesses. Yet NMFS does not disclose what each redacted document specifically depicts or how specific redacted information, if released, would result in identification. *See Wiener v. F.B.I.*, 943 F.2d 972, 977 (9th Cir. 1991). This deprives Oceana of a meaningful opportunity to contest NMFS's withholdings and this Court of its ability to assess NMFS's claims. *Id.*

Second, the Ferdinand declarations do not describe the documents in reasonably specific detail, and provide only speculative and conclusory assertions that, at times, contradict record evidence. Oceana Br. 17–18. The Second Ferdinand Declaration advances hypotheticals about how releasing observer information could—through lengthy chains of events—lead to potential identification. But it does not demonstrate how release of the specific redacted information here would risk identification. *See infra* pp. 13–17. Speculations and attenuated theories do not suffice. *See, e.g.*, *Willamette Indus., Inc. v. United States*, 689 F.2d 865, 868 (9th Cir. 1982) (rejecting agency's unlikely theory that readers could use location and other data in records to indirectly discern identities, and finding agency's arguments "too speculative and not supported by facts" because, although agency "testified that in certain circumstances a knowledgeable person in the industry might be able to identify" persons, "no specific evidence was given as to how often this danger of indirect identification might exist"); *Rosenfeld v. U.S. Dep't of Just.*, 57 F.3d 803, 813 (9th Cir. 1995) (disclosure of name "not likely to identify" party because search would be "impracticable"); *Am. C.L. Union Found. of Arizona v. U.S. Dep't of Homeland Sec.*, No. 14-02052, 2017 WL 8895339, at *24 (D.

Reply in Supp. of Pl.'s Cross-Mot. for Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-KFR     Document 43     Filed 09/22/25     Page 6 of 25

Ariz. Jan. 26, 2017) (identification risk "attenuated" due to "impracticality" of discerning identities from citizenship, nationality, and complexion information, especially because direct identifying information remained redacted); *Block & Leviton LLP v. Fed. Trade Comm'n*, No. 19-12539, 2020 WL 6082657, at *6 (D. Mass. Oct. 15, 2020) (rejecting claim that readers could "reverse-engineer" exempt information from records). The declarations therefore are insufficient under FOIA.

## II.     NMFS Has Not Shown That Exemption 3 Applies to the Redacted Records.

Under FOIA Exemption 3, agencies may only withhold records that are "specifically exempted from disclosure by" another statute. 5 U.S.C. § 552(b)(3). The MMPA governs the releasability of marine mammal take records. Because the records do not constitute proprietary observer information under the MMPA, the redacted information is not exempt. But even assuming that the records contained such information or that the MSA applied here, NMFS fails to show that disclosure has a reasonable risk of revealing identifying information. Thus, NMFS has not shown that any statute specifically prohibits release. *See Carlson v. U.S. Postal Serv.*, 504 F.3d 1123, 1127 (9th Cir. 2007) (information must fall within scope of withholding statute for Exemption 3 to apply, and courts do not defer to agencies in making this determination). Indeed, NMFS has released many substantially similar records with no or little redaction, which it could not have done if those releases were prohibited.

### A.     The MMPA Governs the Marine Mammal Bycatch Records at Issue.

The MMPA governs the marine mammal bycatch records at issue because they depict species protected by the MMPA and have been collected to ensure compliance

Reply in Supp. of Pl.'s Cross-Mot. for Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-KFR

Case 3:24-cv-00279-KFR     Document 43     Filed 09/22/25     Page 7 of 25

with the MMPA. NMFS fails to identify any legal authority supporting its claim that the source of funding for observers determines which statute applies to observer information. As a practical matter, because the MSA provides general authority to NMFS to deploy observers *and* requires compliance with other applicable laws including the MMPA, MSA-funded observers often collect records on marine mammals and other species that are not directly regulated under the MSA, to facilitate compliance with these other laws. NMFS itself has recognized the MMPA's confidentiality provisions apply to observer information on marine mammal take regardless of who collects it.

The MMPA is the relevant statute here because the records depict marine mammal take and were collected for MMPA purposes. The MMPA prohibits take of marine mammals except in specified limited circumstances. 16 U.S.C. § 1371(a). The statute's "immediate goal" is that "incidental mortality or serious injury of marine mammals occuring in the course of commercial fishing operations be reduced to insignificant levels approaching a zero mortality and serious injury rate." *Id.* § 1387(a). The MMPA requires NMFS, *inter alia*, to prevent depletion of marine mammals from incidental take by fisheries, prepare stock assessments for marine mammal populations, and classify fisheries as I, II, and III based on their risk of taking marine mammals. *Id.* §§ 1386(a), 1387(c), (f). The MMPA recognizes that monitoring fisheries' takes is essential for reducing take. *Id.* § 1387(d); *see also id.* § 1387(e) (requiring reporting on marine mammal take). To ensure compliance with the MMPA, NMFS deploys observers to collect information on fisheries' bycatch of marine mammals and uses that information to inform marine mammal management and conservation under the MMPA. *Id.* § 1387(d);

Reply in Supp. of Pl.'s Cross-Mot. for Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-KFR
Case 3:24-cv-00279-KFR    Document 43    Filed 09/22/25    Page 8 of 25

*see* 2nd Brock Decl. Ex. 4 (observer data "is valuable to understanding fisheries bycatch, and cannot be obtained through any other means"); *id.* Ex. 3 ("[North Pacific] observer program provides information that is used in analyses that support the conservation and management of living marine resources and that are required under" the MMPA and other laws); *id.* Ex. 2 (North Pacific observer program data "contribute[s] to the best available scientific information used to manage the fisheries in the North Pacific and meet data collection mandates of" the MMPA and other laws).

The record confirms that the observer information at issue here, depicting marine mammal bycatch in North Pacific groundfish fisheries, is used directly and primarily for MMPA purposes. Per NMFS's report on Alaska marine mammal take from 2016–2020, "the [MMPA] requires [NMFS] to estimate human-caused marine mammal mortality and serious injury," and NMFS uses "records of human-caused mortality and injury of marine mammal stocks … obtained through … observer programs" to calculate these estimates. ECF No. 41-5, at iii, 12. NMFS's Alaska marine mammal stock assessments use observer information on North Pacific groundfish fisheries' marine mammal take to "evaluate the progress of each fishery towards achieving the MMPA's goal of zero fishery-related mortality and serious injury of marine mammals." 2nd Brock Decl. Ex. 1. NMFS's 2025 North Pacific observer program manual also demonstrates that observers deployed in North Pacific groundfish fisheries collect information on marine mammal take to comply with the MMPA. *Id.* ¶ 8, Ex. 3. Indeed, NMFS acknowledges the records at issue support the agency's MMPA responsibilities. NMFS Reply 9, 11, ECF No. 40; 2nd Ferdinand Decl. ¶ 12, ECF No. 41 ("the North Pacific Fishery Observer Program is instrumental in

aiding NMFS to produce annual reports of human-caused mortality and injury of NMFS-managed marine mammals" and "photographs allow NMFS to properly identify the species, analyze the initial determination of injury and cause, and potentially aid in criminal or civil enforcement actions"). Because the records are primarily relevant to ensure compliance with the MMPA, the MMPA applies. Oceana Br. 19–27.

NMFS's claim that the MMPA does not "automatically require" observer coverage in the Category II and III North Pacific groundfish trawl fisheries fails to bolster its case. 2nd Ferdinand Decl. ¶ 2; *see* NMFS Reply 9. Regardless of whether the MMPA automatically requires observers for all Category II and III fisheries, NMFS *does* deploy observers on North Pacific groundfish trawl fisheries for the purpose of collecting marine mammal take information and uses that information for MMPA purposes. *See supra* pp. 4–6; 16 U.S.C. § 1387(c)(3)(B) (Category I and II vessels required to carry observers upon NMFS request), (d)(7) (NMFS may, with vessel owner's consent, station observers on Category III vessels), (d)(2)–(7) (NMFS's obligations and authorities to place observers on vessels). Indeed, NMFS categorizes fisheries into Category I, II, and III because it is required to do so under the MMPA. *Id*. § 1387(c)(1). Observer information on North Pacific groundfish fisheries' marine mammal take is crucial for informing NMFS's categorization of these fisheries under the MMPA. *See* 89 Fed. Reg. 12257, 12258 (Feb. 16, 2024) (NMFS's 2024 List of Fisheries noting "[d]ata obtained from the observer program and observer coverage levels are important tools in estimating the level of marine mammal mortality and serious injury in commercial fishing operations").

Reply in Supp. of Pl.'s Cross-Mot. for Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-KFR

Case 3:24-cv-00279-KFR     Document 43     Filed 09/22/25     Page 10 of 25

NMFS also erroneously claims that the releasability of observer information depends on an observer program's funding source. NMFS provides no legal authority to support this position. Moreover, the suggestion that confidentiality is determined by whether an "MSA-funded" or "MMPA-funded" observer collected the information is inconsistent with how NMFS deploys observers and the information it directs them to collect. To comply with the MMPA, MSA, and other applicable laws, NMFS must collect data on various types of bycatch, including fish, marine mammals, birds, and Endangered Species Act (ESA)-listed species. NMFS does not deploy separate observers on a single vessel or fishing trip to collect data on each category of species. Rather, it deploys one or two observers on a vessel, *see* 50 C.F.R. § 679.51, and tasks each observer with collecting data generally, regardless of how the observer is funded.

For example, NMFS's North Pacific observer program manual explains the duties assigned to an observer deployed on North Pacific fishery vessels—and funded under the MSA, according to NMFS—including recording takes of marine mammals and ESA-listed species. 2nd Brock Decl. ¶ 8, Ex. 3; *see id.* Ex. 4 (North Pacific observer program brochure noting observers collect data on a wide range of species including marine mammals). NMFS admits the observers that collected the information at issue "served a variety of roles collecting information to support [NMFS's] management and responsibilities under the MSA, MMPA, and other law." NMFS Reply 9; *see* 2nd Ferdinand Decl. ¶ 12. Given NMFS tasks North Pacific observers with collecting catch and bycatch data to comply with multiple statutory obligations, categorizing the data they

Reply in Supp. of Pl.'s Cross-Mot. for Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-KFR

Case 3:24-cv-00279-KFR    Document 43    Filed 09/22/25    Page 11 of 25

collect (and the confidentiality thereof) according to the funding source from which NMFS pays them is arbitrary and unsupported.

NMFS's position also defies logic. Under NMFS's interpretation, the same exact photo depicting marine mammal bycatch would be subject to different confidentiality provisions depending on whether it was taken by an MSA- or MMPA-funded observer.

Under a reading that respects statutory language and purpose, the MMPA's information collection and confidentiality provisions apply to information *related to marine mammals* that would help ensure compliance with the MMPA. This is further supported by the fact that, while the MMPA directly regulates marine mammal bycatch (16 U.S.C. § 1387), the MSA defines "bycatch" as used in that statute to concern fish rather than marine mammals. *Id.* §§ 1802(2) ("bycatch" means "fish which are harvested in a fishery, but which are not sold or kept for personal use, and includes economic discards and regulatory discards"), 1802(12) (excluding "marine mammals" from definition of "fish"). Thus, the MMPA is the more appropriate statute through which to evaluate confidentiality of information regarding marine mammal bycatch.

In fact, because the MMPA allows release of a variety of information related to marine mammal take (including the name and description of the fishery; species of each marine mammal killed or injured; date, time, and location of the take; and non-proprietary information regarding fishing practices and gear involved in the take), *see id.* § 1387(e), (f), NMFS itself considers observer information on these topics non-confidential under *both* the MMPA and MSA—irrespective of whether an observer

Reply in Supp. of Pl.'s Cross-Mot. for Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-KFR

Case 3:24-cv-00279-KFR    Document 43    Filed 09/22/25    Page 12 of 25

deployed under the MSA or MMPA collects it. *See, e.g.*, ECF No. 26-2 (Cyr email);[1] 50

C.F.R. § 600.10 (Jan. 16, 2025);[2] 77 Fed. Reg. 30486, 30491–92 (May 23, 2012). This

makes sense: observers deployed under the MSA broadly collect information on

fisheries' bycatch of marine mammals, and it is often necessary to make this information

public to ensure compliance with the MMPA. *See* 77 Fed. Reg. at 30491–92; 89 Fed.

Reg. 17358, 17367–68 (Mar. 11, 2024); 89 Fed. Reg. at 102010–11.[3] For example, the

MMPA requires public involvement in MMPA-mandated processes such as take

reduction team planning. 16 U.S.C. § 1387(f)(1), (f)(6)(D), (f)(7)(B), (f)(8)(B). Because

observer information is essential for developing take reduction plans, the information

must be released to enable implementation of the MMPA. Oceana Br. 5.

Moreover, the MSA requires consistency with other applicable laws, meaning that

NMFS cannot construe the MSA confidentiality provisions in a manner that would

interfere with the language, purpose, and implementation of those laws. 16 U.S.C. §

1854(a)(1), (b)(1), (c)(1). Determining the confidentiality of information based on what

---

[1] The Cyr email constituted interim guidance on the release of observer information under the MSA, MMPA, and ESA, and displays NMFS's longstanding understanding that information on marine mammal take is non-confidential under the MSA and MMPA. Contrary to NMFS's claim, NMFS Reply 8, nothing in the email suggests it does not apply to observer photos. *See* 16 U.S.C. § 1802(32) ("observer information" includes observer photos).
[2] NMFS's 2024 Confidentiality of Information Rule became effective in 2025, 89 Fed. Reg. 102001 (Dec. 17, 2024), and postdates the filing of this lawsuit, so is not applicable here. However, it demonstrates NMFS's continued understanding that a variety of observer information on marine mammal take is non-confidential.
[3] NMFS claims that, although a variety of information on marine mammal take is nonconfidential, photos depicting this same information are different. NMFS Reply 12–13. But "observer information" includes photos. 16 U.S.C. § 1802(32). It is arbitrary and inconsistent with the statutes to treat the confidentiality of photos differently from other observer information, especially because observer photos routinely inform take reduction efforts. Brock Decl. ¶¶ 20–21, ECF No. 26-12; Tribal Amici Br. 11–14, ECF No. 29-2; 2nd Brock Decl. ¶¶ 10–14. While NMFS's response to comments in its 2024 Confidentiality of Information Rule presented this flawed understanding of photo confidentiality, NMFS did not enshrine this interpretation into its regulations. In any case, this Rule does not apply to this case.

Reply in Supp. of Pl.'s Cross-Mot. for Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-KFR
Case 3:24-cv-00279-KFR    Document 43    Filed 09/22/25    Page 13 of 25

the information depicts—rather than how the observer collecting it is labeled—helps ensure compliance with the MMPA and other applicable laws.

Additionally, FOIA strongly favors disclosure and requires FOIA exemptions to be "narrowly construed." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989); *Carlson*, 504 F.3d at 1129 ("an Exemption 3 statute's 'identified class of nondisclosable matters [must be] narrow' to meet the requirements of Exemption 3" (citation omitted)). Because the MMPA's confidentiality provisions are specifically tailored for marine mammal information and treat a narrower category of information as confidential than the MSA, *see infra* pp. 10–11, applying the MMPA to the records at issue comports with FOIA. Unlike NMFS's reading of the law, which subverts the purposes of the MMPA and FOIA and misreads the MSA, Oceana's reading gives "harmonious" effect to each statute's provisions. *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000).

**B.    The MMPA Requires Release of the Redacted Information.**

The MMPA designates *only* "proprietary" observer information as confidential, and *requires* NMFS to "release or make public upon request" any such proprietary information "in aggregate, summary, or other form which does not directly or indirectly disclose the identity or business of any person." 16 U.S.C. § 1387(d)(8), (9). NMFS's arguments that the redacted information constitute proprietary information fail.

First, NMFS incorrectly claims that the MSA and MMPA "contain the same mandate" regarding confidentiality. NMFS Reply 6–7. Whereas the MSA treats "observer information" as confidential, 16 U.S.C. § 1881a(b)(2), the MMPA treats a

Reply in Supp. of Pl.'s Cross-Mot. for Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-KFR

Case 3:24-cv-00279-KFR    Document 43    Filed 09/22/25    Page 14 of 25

narrower category of "proprietary" observer information as confidential, *id.* §
1387(d)(8).[4] NMFS's claim improperly reads the word "proprietary" out of the statute.
*See United States v. Cabaccang*, 332 F.3d 622, 627 (9th Cir. 2003) (en banc) ("[W]e
must interpret statutes as a whole, giving effect to each word …" (citation omitted)).

Second, as NMFS recognizes, observer information on marine mammal take
depicting names and descriptions of fisheries; date, time and location of take; and non-
trade secret fishing practices and gear involved is *not* confidential under the MMPA. *See
supra* pp. 8–9; *id.* § 1387(d), (e), (f). It is inconsistent with NMFS's own understanding
to treat information depicting these details as confidential "proprietary" information
under the MMPA. A more reasonable interpretation of "proprietary" would protect only
the information in which permit holders have protectable property interests, such as trade
secrets. NMFS's overbroad interpretation of "proprietary" to include protectable interests
not specifically tied to a person's property or ownership rights, NMFS Reply 7,
contradicts plain meaning. *See* Proprietary, Black's Law Dictionary (12th ed. 2024)
(defining "proprietary" as "[o]f, relating to, or involving a proprietor" and "[o]f, relating
to, or holding as property"); Proprietary Information, Black's Law Dictionary (12th ed.
2024) (defining "proprietary information" as "[i]nformation in which the owner has a
protectable interest" and referencing the definition of "trade secret"); Proprietary, Online
Etymology Dictionary, https://www.etymonline.com/word/proprietary (last visited Sept.

---

[4] Moreover, NMFS's assertion that the MMPA "provides that [NMFS] may release or make public certain
information, but only in aggregate or summary form, and in such a way that does not directly or indirectly disclose
the identity or business of any person" is wrong. NMFS Reply 6–7. The MMPA *requires* NMFS to release
proprietary observer information "in aggregate, summary, *or other form* which does not directly or indirectly
disclose the identity or business of any person." *Id.* § 1387(d)(9) (emphasis added).

20, 2025) ("proprietary" derived from *proprietas* meaning "ownership; a property"). The Cyr email, which states that "non-proprietary information regarding gear used in [marine mammal] take" is non-confidential, also undercuts NMFS's suggestion that "proprietary" in the MMPA broadly refers to information about fishing vessels and practices.

Third, information depicting names and descriptions of fisheries, date and time and location of the take, and non-trade secret fishing practices and gear—the same kind of information at issue here—is essential for understanding and reducing marine mammal take under the MMPA. *See supra* pp. 4–10. Oceana is seeking the information to effectuate the MMPA's purposes by formulating and advocating for more effective marine mammal take reduction measures in North Pacific groundfish fisheries. Brock Decl. ¶¶ 18–24. NMFS's withholdings contradict the language and purpose of the MMPA.

Fourth, NMFS's claim that it is proper under the MMPA to disclose only the "mammal imagery component" and withhold the "fishery component" in photos fails for the same reason. NMFS Reply 11. Section 1387 of the MMPA concerns *fisheries'* take of marine mammals and requires that such take be reduced. 16 U.S.C. § 1387. Thus, contrary to NMFS's illogical assertion that the MMPA is relevant only to the portion of the photos depicting the marine mammal and not the fishing operations that *caused* the take, the MMPA directly concerns the "fishery component" of the photos. Details regarding the fishery causing the bycatch, the fishing practices and gear involved, and the date and time and location of the take are essential for developing measures to reduce take, such as gear modifications or changes in fishing practices. Therefore, NMFS must

release information about the "fishery component" to comply with the MMPA's take reduction and public involvement mandates. *Id.* § 1387(a), (f).

**C.** **The MMPA and MSA Require Release of the Redacted Information Because Release Would Not Disclose Identities or Businesses.**

Even assuming that the records at issue were either proprietary observer information under the MMPA or subject to MSA confidentiality provisions, neither statute specifically prohibits the release of the information under FOIA Exemption 3. NMFS has not shown that the redacted information, if released, would directly or indirectly reveal the identities or businesses of persons. *Id.* §§ 1387(d)(9), 1881a(b)(3).

**1.** **Pixelated redactions in photos**

NMFS's assertion that disclosing the redacted information in the photos could theoretically disclose identifying information depends on a lengthy chain of hypothetical events and is speculative, implausible, and unsupported by the facts. Oceana Br. 21–25; *see id.*, Figures 3–11 (examples of pixelated photos). NMFS has not met its burden under FOIA to show that Exemption 3 applies.

First, NMFS broadly hypothesizes that disclosing unspecified vessel features and individuals depicted in the photos' background "could" reveal identity or business. NMFS Reply 4. This generalized statement about the photos as a whole fails to connect the specific redacted information in each photo to any real risk of revealing identifying information. *See, e.g.*, *Willamette*, 689 F.2d at 868 (agency's speculative and unspecific concerns about indirect identification do not suffice). NMFS does not explain what vessel features are depicted in *each* photo or how those particular features would result in actual or potential identification of persons. Oceana is not seeking information such as faces,

Reply in Supp. of Pl.'s Cross-Mot. for Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 1:24-cv-00279-KFR
Case 3:24-cv-00279-KFR   Document 43   Filed 09/22/25   Page 17 of 25

names, or distinctive details such as tattoos, and NMFS provides no explanation as to how non-distinctive information in a photo would result in identification. For example, NMFS has presented no evidence that identification from information such as generic fishers' clothing is possible—particularly because, as explained below, there are far more vessels in these fisheries than NMFS suggests.

Second, NMFS's claim that there are a "limited" number of vessels in the North Pacific groundfish trawl fishery is misleading and unsupported by the facts. As an initial matter, Oceana's Requests 2 and 3 sought photos and records from *all* North Pacific groundfish fisheries, not only *trawl* fisheries. NMFS does not dispute that there are more than 600 North Pacific groundfish fishing vessels every year. Oceana Br. 7. NMFS does not claim that there is reasonable risk of identification of one vessel from this large pool, nor does it present any evidence to support such a theory.

NMFS also ignores that Oceana's requests sought photos over multiple years (Request 1 sought photos from 2009 to 2021; Requests 2 and 3 sought records from 2019 to 2023), meaning that the pool of possible vessels depicted in the photos include all vessels fishing over these multi-year periods—not just the vessels fishing in a given month or year. *Cf.* 2nd Ferdinand Decl. ¶¶ 3–4 (discussing only the monthly and annual number of vessels in the North Pacific groundfish trawl fishery). Thus, the pool is far larger than NMFS suggests.

Regarding Request 1, which sought records related to North Pacific groundfish trawl vessels, NMFS states that there are between 114 to 138 such vessels per year. 2nd Ferdinand Decl. ¶ 4. NMFS does not explain how there could be reasonable risk of

identification when there are more than 100 vessels in the fishery each year and the request covers 12 years. *See Forest Guardians v. U.S. Dep't of Interior*, No. 02-1003, 2004 WL 3426434, at \*16 (D.N.M. Feb. 28, 2004) (agency failed to show risk of identification where about 123 permittees per field office used their permits as collateral, and agency did not say "what minimal number of permittees in a field office—1, 2, 10, etc.—would make it possible" to link a permittee to requested collateral records).

NMFS's claim that there are "limited" numbers of vessels is based solely on dividing the North Pacific groundfish trawl fishery into more specific sectors. 2nd Ferdinand Decl. ¶¶ 3–4. But Request 1 sought photos from all trawl vessels over the course of 12 years, so the monthly or annual number of vessels in these specific sectors of the trawl fishery is irrelevant. Regardless, NMFS has in the past released unredacted or minimally redacted photos depicting vessels from a fishery sector with an average of 20 active vessels per year. Brock Decl. ¶ 19; *see also infra* pp. 17–18 (NMFS releasing unredacted or minimally redacted photos in response to Oceana's requests). NMFS does not explain why it is only sometimes prohibited from releasing photos from fisheries with limited vessels.

Moreover, NMFS does not claim, let alone demonstrate, that each photo at issue here would disclose such specific information about a vessel type that a viewer would be able to pinpoint a particular vessel. NMFS only speculates that, "*[i]f* the imagery released allowed the viewer to identify" a particular vessel type used within specific sectors, then a viewer may be able to narrow down the potential sectors to which the vessel may

Reply in Supp. of Pl.'s Cross-Mot. for Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-KFR
Case 3:24-cv-00279-KFR     Document 43     Filed 09/22/25     Page 19 of 25

belong. 2nd Ferdinand Decl. ¶ 5 (emphasis added). NMFS does not claim that the photos at issue would allow a viewer to identify sectors, let alone the exact vessel.

Third, NMFS points to one *non-observer* photo of orca bycatch, likely taken by a crew member and posted online, to theorize that the redacted information, if released, could prompt individuals to identify vessels and persons. Since this photo is not an observer photo, it is not relevant to the question of whether observer photos at issue here must be released. NMFS has not pointed to any instance where the release of an unredacted or minimally redacted observer photo—such as the many photos NMFS has routinely released—resulted in disclosure of identifying information specifically prohibited by the MMPA or MSA.[5]

## 2. Photo metadata of fishery name, date, and location

Observer information showing the fishery name and date and location of marine mammal take is not exempt from disclosure. *See supra* pp. 8–9. However, to minimize even a marginal possibility for identification, NMFS could detach photos' metadata depicting the fishery name, date, and location from the photos themselves and release this metadata separately. Alternatively, NMFS could release each photo with its metadata regarding fishery name, location, and the month and year of take (but withhold the precise day). Or NMFS could release the photos with its metadata regarding fishery name and location, and separately release information regarding the month and year. Withholding the precise date but releasing the month that take occurred would abate any

---

[5] Moreover, NMFS has not shown the non-observer photo actually resulted in identification of a vessel or crew members. NMFS points to one social media poster's speculation that a vessel likely belonged to a particular company, ECF No. 41-19, but NMFS does not claim the company was *correctly* identified.

Reply in Supp. of Pl.'s Cross-Mot. for Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-KFR
Case 3:24-cv-00279-KFR    Document 43    Filed 09/22/25    Page 20 of 25

risks of individuals attempting to use Automatic Identification System (AIS) data to identify vessels, while also providing Oceana with information essential for understanding where, when, and why marine mammal take is occurring, which is necessary to reduce such take. For example, data on the location and months where take occurred could reveal that marine mammal take is especially high in certain areas or during certain times of year, which would inform measures to reduce take.[6]

### 3.    Redacted information in the incident spreadsheets

Observer information showing the fishery name and description, date and time and location of marine mammal take, and the non-trade secret fishing practices and gear involved is not exempt. *See supra* pp. 8–9. NMFS could release these spreadsheets with the time, location, fishing practices and gear involved, and the month and year of take.

### D.    NMFS Fails to Justify Its Inconsistent Invocation of Exemption 3.

Contrary to NMFS's suggestion that Oceana is seeking to "significant[ly] change" what information is protected under the law, 2nd Ferdinand Decl. ¶ 11, Oceana's requests are consistent with NMFS's own historical understanding and practice. Oceana Br. 28–29. Instead of explaining its inconsistent invocation of Exemption 3, NMFS claims that "some imagery was determined by [NMFS] to be non-confidential," NMFS Reply 16, without explaining why the unredacted or less redacted marine mammal bycatch photos were deemed non-confidential but substantially similar—and sometimes, almost-

---

[6] NMFS did not go "above and beyond" its duty to respond to Oceana's requests. NMFS Reply 2, 18. The spreadsheet NMFS references correlated a portion of the photos released to the date of take, contained mostly already publicly available information, and did not contain location data or the fishery name as requested, preventing Oceana from understanding where and how take occurs. 2nd Brock Decl. ¶ 4. For this spreadsheet, NMFS could release metadata regarding locations of the photos separately so that a viewer would not be able to correlate the location with the photos' dates.

Reply in Supp. of Pl.'s Cross-Mot. for Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-KFR
Case 3:24-cv-00279-KFR    Document 43    Filed 09/22/25    Page 21 of 25

identical—photos were not. *See* Brock Decl. ¶¶ 4–9; Oceana Br. 9–14. NMFS suggests

the agency's change to the pixelation method was aimed at increasing "efficiency."

NMFS Reply 16. But FOIA does not allow agencies to withhold information so they can

more easily process requests. Oceana Br. 34 n.23; *see infra* pp. 18–20.

NMFS's claim that "changing understandings of what constitutes an indirect

disclosure" partly informed the agency's change to the pixelation method, NMFS Reply

16, is inconsistent with evidence in the record. First, its declarations do not claim that

NMFS switched redaction methods due to changes in understanding. To the contrary, the

Ferdinand Declaration claimed the pixelation method allowed for "more precise"

redactions. Ferdinand Decl. ¶ 41. Second, NMFS at times released heavily redacted

photos and unredacted photos apparently depicting similar information not just in the

same release but *in the same document*. Brock Decl. ¶ 6. Had the change to the pixelation

method been driven by a new understanding of confidentiality, it would not make sense

for the agency to simultaneously release certain information with no or minimal

redactions and substantially similar information with extensive redactions. Third, the

social media discussions regarding the non-observer orca bycatch photo occurred well

before NMFS released unredacted and minimally redacted photos in response to

Oceana's requests and thus likely did not drive NMFS's recent change to pixelation.

## III.  NMFS Did Not Reasonably Segregate All Non-Exempt Information.

Even assuming the records contained some exempt information, NMFS fails to

show that the withheld information constitute entirely exempt, non-segregable material. 5

U.S.C. § 552(b). NMFS has not provided a segregability analysis detailing how the

Reply in Supp. of Pl.'s Cross-Mot. for Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-KFR
Case 3:24-cv-00279-KFR     Document 43     Filed 09/22/25     Page 22 of 25
18

redacted portions are exempt in their entirety. Oceana Br. 33–34. NMFS does not explain how everything in the photos except the marine mammal—including what appears to be the sky and water—could disclose identifying information. *Id.*, Figs. 3–11.

NMFS claims its failure to reasonably segregate the photos is excusable because of the alleged "voluminous amount of records and time-consuming amount of work at issue." NMFS Reply 18. But NMFS's duty to segregate "does not depend on the volume of documents." *Anderson v. CIA*, 63 F. Supp. 2d 28, 30 (D.D.C. 1999). All non-exempt portions of a document must be disclosed unless they are so "inextricably intertwined" with exempt portions that separating them would "impose significant costs on the agency and produce an edited document with little informational value." *Willamette*, 689 F.2d at 867–68 (citations omitted).

The exempt and nonexempt information in the photos are not "inextricably intertwined." NMFS has released, in response to these same FOIA requests, unredacted and minimally redacted photos, which demonstrates that segregation would not impose significant agency costs. In cases where courts have not required segregation, the costs on the agency far exceeded what is at issue here. *See, e.g.*, *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1039 (7th Cir. 1998) (district court did not clearly err in not requiring segregation where it would take eight work-years to identify non-exempt information in millions of pages of documents, and only a very small percentage of documents were non-exempt). Here, NMFS produced 1,248 records, many of which Oceana is not challenging because they were unredacted or minimally redacted. The redacted information also has significant informational value because it depicts the

Reply in Supp. of Pl.'s Cross-Mot. for Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-KFR

Case 3:24-cv-00279-KFR     Document 43     Filed 09/22/25     Page 23 of 25

relationship between marine mammal bycatch and the fishing operations that caused the bycatch, which is the reason Oceana sought these records.

NMFS also points to one instance where the agency discovered a vessel name shown "small and in an unexpected location." 2nd Ferdinand Decl. ¶ 16. NMFS's claim that this name would not have been redacted had the agency used a more selective redaction method lacks merit: after all, NMFS discovered the vessel name while reviewing the photo, and there is no evidence it would not have discovered the name earlier had it actually performed the required segregability review instead of using the overbroad pixelation method. Regardless, NMFS's unfounded fear of accidental release is not a legitimate reason to withhold non-exempt information under FOIA. *See Willamette*, 689 F.2d at 867–68 (only non-exempt portions "inextricably intertwined" with exempt portions may be withheld). NMFS offers no case holding that an agency may evade FOIA's segregability requirements solely because it could theoretically overlook some exempt information during its segregability review.

## CONCLUSION

Oceana respectfully requests that the Court order NMFS to immediately disclose the requested information. To the extent NMFS withholds any information, the Court should order NMFS to submit a *Vaughn* index. In the alternative, the Court should review the documents *in camera* and order NMFS to release all non-exempt information and submit a *Vaughn* index and adequate justifications for any withholdings.

Respectfully submitted this 22nd day of September, 2025.

/s/ Rumela Roy
Rumela Roy (*pro hac vice*)
EARTHJUSTICE
1125 17th Street, Suite 1010
Denver, CO 80202
303-996-9623 Telephone
rroy@earthjustice.org

Andrea A. Treece (*pro hac vice*)
EARTHJUSTICE
180 Steuart St. #194330
San Francisco, CA 94105
415-217-2000 Telephone
atreece@earthjustice.org

*Counsel for Plaintiff*

Reply in Supp. of Pl.'s Cross-Mot. for Summ. J.
*Oceana v. National Marine Fisheries Service*
Case No. 3:24-cv-00279-KFR
Case 3:24-cv-00279-KFR    Document 43    Filed 09/22/25    Page 25 of 25